# The Chicago, Burlington and Quincy R. R. Co.

## *v.*

# The People of the State of Illinois.

1. Railroads—*liability to penalty for extortion in their charges.* To hold a railroad company liable to the penalties provided in the act to prevent extortion, etc., approved May 2, 1873, on the ground of extortion, it must be shown that it charged more than the maximum rates fixed by the Board of Railroad and Warehouse Commissioners, and until these rates are fixed, no liability can be incurred, under the statute, for unreasonable or extortionate charges, and when made, the taking of the rates named, or less rates, will not incur the penalty, even though the proof shows them to be more than fair and reasonable rates.

2. Pleading—*declaration for penalty for unreasonable rates.* It not being sufficient to charge a railway company, under the statute, with the penalty for charging unreasonable rates, on the ground that they were simply unreasonable and extortionate, without reference to the schedule of rates

fixed by the commissioners, a declaration in a suit to recover the penalty is fatally defective, which fails to aver that a schedule of rates had been established as provided for in the statute, and that the defendant had charged in excess of those rates.

3. Same—*unjust discriminations in freights and charges—declaration.* In an action against a railway company, to recover the statutory penalty for making unjust discriminations in its rates of charges of toll and for freights, the declaration must show that the respective freights mentioned were of like quantity, of the same class, and that, in respect to such freight, there was a higher charge for a less, than for a greater distance. The description of the respective freights merely as one car load of ponies, and one car load of horses, does not sufficiently show them to be "like quantities of freight of the same class."

Appeal from the Circuit Court of McDonough county; the Hon. Chauncey L. Higbee, Judge, presiding.

Mr. O. H. Browning, and Messrs. Dexter & Smith, for the appellant.

Mr. James K. Edsall, Attorney General, and Mr. Chas. Wheaton, for the People.

Mr. Justice Sheldon delivered the opinion of the Court:

This was an action of debt, brought to recover penalties under the act to prevent extortion and unjust discrimination in the rates charged for the transportation of passengers and freight on railroads in this State, etc., approved May 2, 1873. The suit was commenced May 21, 1874. The declaration contained twenty counts, the first nineteen of which were for extortion, and the twentieth for unjust discrimination.

The defendant pleaded three special pleas, to which a demurrer was sustained, and the defendant electing to abide by the pleas, the court, a jury being waived, heard the evidence, and fixed the penalty for a violation of the statute at $1000, and gave judgment therefor, from which the defendant brings this appeal.

It is urged that the court below erred in not carrying back the demurrer, and sustaining it to the declaration.

Appellant insists that the declaration is defective, in not averring that a schedule of reasonable rates of charges for the transportation of passengers and freight had been established as provided for by the 8th section of the act, and that the defendant had demanded and received compensation in excess thereof.

The statute provides, in section 1, that, if any railroad corporation in this State shall charge. collect, demand or receive more than a fair and reasonable rate of toll or compensation for the transportation of passengers or freight, etc., the same shall be deemed guilty of extortion, and, upon conviction thereof, shall be dealt with as thereinafter provided.

And in section 2, that, if any such railroad corporation shall make any unjust discrimination in its rates or charges of toll or compensation for the transportation of passengers or freight, etc., the same shall be deemed guilty of having violated the provisions of the act, and, upon conviction, shall be treated as thereinafter provided.

Section 4 provides that, any such railroad corporation guilty of extortion, or of making any unjust discrimination as to passenger or freight rates, etc., shall, upon conviction thereof, be fined in any sum not less than $1000 nor more than $5000, for the first offense; and for the second offense, not less than $5000 nor more than $10,000; and for the third offense, not less than $10,000 nor more than $20,000; and for every subsequent offense, and conviction thereof, shall be liable to a fine of $25,000.

Section 8 directs the Railroad and Warehouse Commissioners " to make for each of the railroad corporations doing business in this State. as soon as practicable, a schedule of reasonable maximum rates of charges for the transportation of passengers and freight and cars on each of said railroads; and said schedule shall. in all suits brought against any such railroad corporations wherein is in any way involved the charges of any such corporation for the transportation of any passenger or freight or cars, or unjust discrimination in relation

thereto. be deemed and taken in all courts of this State as *prima facie* evidence that the rates therein fixed are reasonable maximum rates of charges for the transportation of passengers and freights and cars upon the railroads for which said schedules may have been respectively prepared. Said commissioners shall. from time to time, and as often as circumstances may require, change and revise said schedules. When any schedules shall have been made or revised as aforesaid, it shall be the duty of said commissioners to cause publication thereof to be made for three successive weeks, in some public newspaper published in the city of Springfield, in this State : *Provided,* that the schedules thus prepared shall not be taken as *prima facie* evidence, as herein provided, until schedules shall have been prepared and published as aforesaid for all the railroad companies now organized under the laws of this State, and until the 15th day of January, A. D. 1874, or until ten days after the meeting of the next session of this General Assembly, provided a session of the General Assembly shall be held previous to the 15th day of January, aforesaid," etc.

The charge of the offenses in the declaration is in general form, the language in one of the counts, which, in this respect, is a fair specimen of all, being, that the sum charged "exceeded a fair and reasonable rate of toll and compensation for the carriage of the goods, in the sum of $1.91, and was then and there unjust, unfair, unreasonable and extortionate, contrary to the form of the statute," etc.

Looking merely at the first section of the statute, the declaration would seem to describe the statutory offense. That section, by itself, makes the offense to consist in taking more than a fair and reasonable rate of toll and compensation, without reference to any standard of what is fair and reasonable. In such case, it may be seen, different persons would have different opinions as to what is a fair and reasonable rate; courts and juries, too, would differ. and at one time or place a defendant might be convicted and fined in a large amount

for the same act, which, in another place, or at another time, would be held to be no breach of the law, and what might be thought a fair and reasonable rate on one road, might be considered otherwise upon another road. There would be no certainty of being able to comply with the law. A railroad corporation, with purpose of conforming to the law, might fix its rates at what it believed to be reasonable, and yet be subjected to the heavy penalties here prescribed.

The statute furnishes evidence that it did not intend to leave the railroad companies in this state of uncertainty and danger, and exposed to such seeming injustice. We must look to the entire statute, and to every part and provision of it, to learn in what the offense is really made to consist. The 8th section provides how reasonable rates shall be ascertained; what they shall be; that the Railroad and Warehouse Commissioners should make for each of the railroad corporations in the State a schedule of reasonable maximum rates; thus furnishing a uniform rule for the guidance of the railroad companies. When that is done, there will be a standard of what is fair and reasonable, and the statute can be conformed to and obeyed. The careful provision made by the statute for the publication, in a public newspaper, for a length of time, of the schedules, when made, and that, until so published, they should not be such *prima facie* evidence, indicates, as we may suppose, the legislative intention that the railroad companies should have fair notice of the schedule of rates, and so have the opportunity afforded to them of being able to conform thereto. The provision, too, that the schedule of rates is to be made *for* each of the railroad corporations in the State, is another indication in the same direction.

We are of opinion, from an examination of all the provisions of the statute, taken together, that a disregard of the schedule of rates to be prepared by the Railroad and Warehouse Commissioners is a necessary element of the offense against which the statute is directed—that it is the charging more than the maximum rates fixed by said board of commis-

sioners, which makes the company guilty of extortion. under the statute, within its true intent and meaning. We can not think that, until this schedule of rates was made by the board of commissioners, there would, under the statute, be incurred a liability for unreasonable and extortionate charges; nor that, when the schedules were made, that for taking the rates fixed by the schedule, or less rates. the statutory penalties would be incurred, even though proof might be made that the rates so taken were more than fair and reasonable rates. Yet, in such last case, according to the terms of the first section of the statute, and the interpretation put upon the act by appellee, there would be a commission of the statutory offense, as there would have been the taking of more than fair and reasonable rates. The evident purpose was. to regulate and fix, so far as the legislature might, the rates of railroad charges, and to punish the taking in excess of the fixed rates; and the form of the provision, making the schedule of rates *prima facie* evidence of what were reasonable maximum rates, was, doubtless, to avoid the objection indicated in the opinion in *C. and A. R. R. Co.* v. *The People*, 67 Ill. 11, to the legislature making any fixed rates conclusive of what was reasonable, and to follow the intimation in that opinion, that they should be made but *prima facie* evidence. It is true, that the taking of higher rates than those fixed by the commissioners' schedule of rates, is not the exact form of the statutory offense, and the taking of such higher rates might not subject to the penalties of the statute, upon the making of proof that they were fair and reasonable. Still, as we view it, to constitute the offense really designed and intended by the statute, regarding it in its whole scope and purpose, the rates taken must have been in excess of the schedule rates.

It was not enough, then, we think, to bring the case fully within the provisions of the statute, that the rates charged were simply unreasonable and extortionate, but they should have been so according to the rule of reasonableness to be prescribed under the statute, and we are of opinion that the

declaration, in this respect, was defective in not averring that a schedule of rates had been established by the board of commissioners, and that the defendant had received compensation in excess of those rates.

We think what has already been said sufficiently meets the position taken by appellee, that the statutory offense consists simply in receiving more than a fair and reasonable rate of compensation, and that the schedule of rates is but *prima facie* evidence of what is reasonable, and that it is not necessary for a party to plead evidence. In the view taken, the schedule of rates is something more than evidence—it is a fact upon which the action rests.

Under the constitutional provision, the statute would go into effect July 1, 1873, and so, from that date the first and fourth sections prohibiting and imposing penalties for extortion be in force; but the eighth section provided that the schedules of rates could not be used as *prima facie* evidence until the 15th day of January, 1874, and appellee's counsel make a point upon this, as evincing that the existence of the schedule of rates was not essential to the commission of the offense of extortion under the act. But we can view this as but an accidental incongruity in the respect named, not entitled to such serious regard as to be of controlling force in determining the true construction of the statute.

But it is insisted, on the part of appellee, that there is at least one good count, the 20th, that which declares for unjust discrimination.

The charge in the count is, that defendant made an unjust discrimination in its rates and charges of toll and compensation of freight from Quincy to Macomb, in this, that defendant, on the 11th of April, 1874, transported, for James T. Applegate and Samuel Dodd, from Quincy to Macomb, one car load of horses, commonly called ponies, a distance of 59 miles, charging therefor the sum of $28.34, being at the rate of 48 cents per mile; and that said defendant, on the 30th of March, 1874, transported, from Macomb to Chicago, a dis-

29—77TH ILL.

tance of 204 miles, for Robert Smithers and James Robinson, one car load of horses, charging therefor only the sum of $55.20, being at the rate of 27 cents per mile for the carriage of said car load of horses, contrary to the form of the statute, etc.

The statute defines, in section three in respect to unjust discrimination, as it provides in section eight in respect to reasonable rates, what shall be deemed and taken as *prima facie* evidence of the unjust discriminations prohibited by the act. The language of the section in respect to freight, is, charging a greater amount of compensation for any distance than is at the same time charged "for the transportation in the same direction of any passenger or *like quantity* of freight *of the same class* over a greater distance of the same railroad." This count, we think, does not present a state of facts which shows a violation of the statute, in that there is no averment as to the respective freights being of "like quantity of the same class," or that, in respect of *such freight,* that was a higher charge for a less, than for a greater distance. There is no averment whatever upon this head, either in respect of the numbers of the respective animals, or their weight, or the size or class of the cars containing them, or otherwise. The section itself recognizes the fact of there being railroad cars of different classes and numbers, for, in defining unjust discrimination in respect to cars, it provides that they be of the "same class or number."

The description of the respective freights merely as one car load of ponies, and one car load of horses, does not, in our view, sufficiently show them to be "like quantities of freight of the same class."

The rules applicable to the enforcement of penal statutes require, that it should be made clearly to appear that the precise statutory offense has been committed.

Being of opinion that the demurrer should have been carried back and sustained to the declaration, instead of to the pleas, the judgment will be reversed.

*Judgment reversed.*

Mr. Justice Scott and Mr. Justice McAllister:

We concur in reversing the judgment in this cause, but dissent from the reasoning of the opinion of the majority of the court, especially so far as it may be said to assume the constitutionality of the act under discussion. As the majority of the court have avoided any discussion of the real merits of the case, we do not deem it necessary to express our views at length.

Mr. Chief Justice Walker and Mr. Justice Scholfield:

We hold that the first, second and third sections of the act create complete offenses, independent of the eighth section; that the fourth section imposes penalties for their violation; that the eighth section only prescribes a rule of evidence on the trial for the recovery of the penalty. Whether that section is valid, and has changed the rule, does not, as we think, arise on the pleadings, and can only be presented for decision when the schedules provided for by it shall be offered in evidence.

We hold that the averments contained in the 20th count show a violation of the second and third sections of the act, and that it is good. Those sections define the offense of unjust discrimination, and the averments show that the offense was committed. The pleas fail to present a defense to the charge of unjust discrimination for the use of the cars, and the statute has declared that the facts stated in this count *prima facie* constitute an unjust discrimination, and the statute is warranted under the decision in the case of *The Chicago and Alton Railroad Co.* v. *The People*, 67 Ill. 11, where it was held that the General Assembly have the power to declare that the facts averred in this count shall be held *prima facie* evidence of unjust discrimination, leaving the company to overcome the presumption. In this case there was no evidence to rebut the presumption, but, on the contrary, the demurrer admits the facts, and we think the judgment should be affirmed under the 20th count in the declaration. But we

refrain from the expression of any opinion as to what, if any, change of the rules of evidence has been made by the eighth section of the act, as that question does not arise on this record. The want of time prevents us from presenting our views in a more extended form.