# THE KANKAKEE COAL CO.

## v.

## ILLINOIS CENTRAL R. R. CO.

1. RAILROADS—UNJUST DISCRIMINATION.—Where, in an action brought under the statute against unjust discrimination the railroad company refused to abide their agreement, and ship as cheaply as other roads, and the shipper refused to pay the charges and would not ship at all, and the damages asked were for the profits that the shipper would have made if he had shipped his coal. *Held*, that the statute does not provide for a case where there has not been a shipment.

2. PLEADING.—The statute against unjust discrimination is a penal statute and it should be made clearly to appear that the precise statutory offense has been committed. The allegations as to quantity in the declaration not being made with reasonable certainty, the demurrer was properly sustained.

APPEAL from the Circuit Court of Kankakee county; the

Hon. Franklin Blades, Judge, presiding. Opinion filed December, 4, 1885.

Mr. A. Sample and Mr. Stephen R. Moore, for appellant; cited C. & A. R. R. Co. v. People, 67 Ill. 11; W. St. L. & P. Ry. Co. v. People, 105 Ill. 263.

Mr. B. Fayer, Mr. Chas. H. Wood and Mr. Harrison Loring, for appellee; cited St. L., A. & T. H. R. R. Co. v. Hill, 14 Bradwell, 580; C. & P. R. R. Co. v. Forsaith, 59 N. H. 122; Strick v. Swansea Canal Co., 16 C. B. N. S. 256; In re Nicholson, etc., 5 C. B. N. S. 366; In re Harris, etc., 3 C. B. N. S. 712; In re Jones, etc., 3 C. B. N. S. 718; In re Oxlade, etc., 15 C. B. N. S. 680.

Lacey, P. J. This was a suit commenced in the circuit court by appellant against the appellee to recover damages for unjust discrimination in freight in favor of the Central Illinois Coal Co., and against appellant. The declaration consists of four counts to which the appellee demurred, which was sustained by the court, and the appellant abiding his declaration the court rendered judgment against appellant for costs, from which judgment of the court an appeal is taken to this court and the action of the court assigned for error. The suit is brought under the act of 1873 against extortion and unjust discrimination. The action is brought under sections 2 and 3 of said act. Section 3 provides that, "if any such railroad corporation shall charge any person * * for any freight of any description upon its railroad for any distance, within this State, the same or any greater amount of toll or compensation than is at the same time charged, collected or received for the transportation of any * * like quantity of freight of the same class of equal or greater distance of the said railroad * * all such discriminating rates * * * shall be deemed and taken against such railroad as *prima facie* evidence of unjust discrimination prohibited by the provisions of this act."

The declaration consists of four counts. In the first count

.a contract is recited by way of inducement between appellant and appellee. It is averred that appellee agreed to transport appellant's coal from Clark City to Chicago, and all intermediate points over its said railroad, at as low a rate as that given to any other coal company or person shipping coal on its said railroad, and that it should have its coal transported as aforesaid to Chicago, at as low rates as the Chicago and Alton Railroad Company should, and was transporting coal from Braidwood on the line of the said road to Chicago aforesaid. That appellant had laid out and expended a large sum of money, to-wit, $50,000, in purchasing a coal mine in said Clark City, and in sinking a shaft thereat, and providing necessary machinery and appurtenances for the purposes of mining and hoisting coal from its said mine, and there loading the same on the cars for transportation over its said road from December, .1882, and from thence hitherto, at said Clark City ; the plaintiff was ready and able to ship and transport over said defendant's railroad to Chicago and intermediate stations   *   *   *   large quantities of coal daily, 100 tons per day, and from the first day of March, 1883, the plaintiff was ready and able to increase such shipments to 400 tons daily. Then the count charges in various language that the agreement was violated by the appellee charging the appellant a higher rate of freight, for transporting its coal by the car load, than it did the Central Illinois Coal Company, without specifying the amount of coal of the appellant that was overcharged or discriminated against, and avers that appellee refused to fulfill the agreement by refusing to carry its coal at as low a rate as the C. & A. R. R. Co. carried coal from Braidwood to Chicago. That the latter road .from December, 1882 on, charged 75 cents per ton, while'appellee .charged it $1.36. The count closes by claiming damages by reason of such unjust discrimination and by reason of the fail-.ure and refusal of the appellee to transport coal for the plaintiff from its said mine to Chicago, at as low a rate as was charged by the Chicago and Alton R. R. Co. from Braidwood to Chicago. The plaintiff was prevented from shipping its coal in the large quantities it was prepared to furnish, and was driven out of the market, and its mine, on which so much

money had been expended on the faith of the representations and agreement aforesaid, rendered substantially worthless. This count should have been in assumpsit for breach of contract t) carry coal at as low a rate as the Chicago and Alton R. R. Co. from Braidwood, and at as low a rate as that given to any other coal company, or person shipping over said road to Chicago, a cause of action which would have been entirely foreign to the one provided for in the statute. The only damages claimed on this account are those arising from the appellant being prevented, as is averred, from selling and shipping its coal in the large quantities it was prepared to furnish, and being driven out of the market, and its mine, on which so much money had been expended on the faith of the representations and agreement of the appellee, being rendered substantially worthless. In this count of the complaint, discrimination in the terminal and switching facilities mentioned, is charged as a part of the discrimination in freights, it being the manner in one particular of such discrimination, and to that extent a breach of the agreement. The fraud charged in this count, in order to make it a count in case as no doubt was intended, consisted in nothing more than the promise by the appellees to convey coal for certain prices, and the breach of such agreement. It is difficult to see how fraud can arise out of the facts set out. It was a mere promise and a breach as declared.

The substance of the claim for damages arises from the fact, as it appears, that on account of the failure of the appellee to abide his agreement and ship as cheaply as the Chicago and Alton and other companies, the appellant refused to pay the charges demanded and would not ship at all, and now asks pay for the profits on coal that he otherwise would have shipped—400 tons daily—and also the loss of the mine. We do not think that this class of damages could be recovered, for the reason that in case of actual unjust discrimination the shipper, according to the provisions of the statute, can recover three times the amount of the damages, together with attorney's fee, and does not provide for a case where there has not been a shipment but simply a demand for illegal freights on the one side and a refusal on the other to ship.

This would not be a case of unjust discrimination provided against by the statute, and if this count is framed under the provisions of the statute, as is claimed by appellant's counsel, then it is bad for that reason ; for it is not alleged that any particular amount of coal was actually carried and discriminated against, and the damages claimed seem to be restricted to those named, and this seems to be the scope and intent of the count.

For this reason we think the demurrer was properly sustained to this count of the declaration.

The second count is very general in its terms, but is framed somewhat on the same idea of the first count, relying upon the agreement set out in the first count. This count avers that the appellant, on December 1, 1882, and from thence hitherto, was prepared to mine and transport coal from Clark City to Chicago and intermediate stations in large quantities of coal, 200 tons daily, but defendant, to wit, December 1, 1882, and from thence hitherto, refused to transport coal for appellant over its said road as cheaply as for a rival company, viz., the Central Illinois Coal Company, over the same route, in the same quantities, at the same time and in the same direction and for the same distance, but on the contrary, appellee charged, collected and received from the appellant a discriminating sum of, to wit, fifty cents per ton by the car load for the transportation of appellant's coal over its road from Clark City, aforesaid, to Chicago and intermediate points, 10,000 tons of coal over and above what it charged, collected and received for the transportation of a like quantity of coal for said Central Illinois Coal Company by the car load over the same route, at the same time and in the same direction, and for a greater distance. This count, while having the fault of mixing up two causes of action in one, is not specific enough.

It does not give the specifications of the shipments but charges that from a certain date the appellee *refused* to ship ; but it does not aver that those were the dates on which the illegal toll was taken, even if this general statement, if followed, had been sufficient. It fails also to show how much coal was shipped from Clark City to Chicago, and how much

to intermediate points and what intermediate points. The count shows, if anything, that the shipments were made over equal distances, yet, in assigning the violation, it avers that the Central Illinois Coal Company was charged less freight for a *greater* distance.

The allegations must be made with reasonable certainty, so that appellee may know what it has to meet. This count is made somewhat under the language of the statute without dates or specifications, and was properly subject to demurrer.

The third count avers that during the months of January, February and March, 1883, the appellee carried over its said road from Tracy to Kensington, a distance of 69 miles, the coal of the Central Illinois Coal Company, large quantities, to wit, 100 tons daily in train loads, for which service or transportation appellee collected from the Central Illinois Coal Company at 83 cents per ton, and during the same time appellees carried over its same road from said Clark City to said Kensington, a distance of 68 miles, the coal of the appellant in large quantities, to wit, 50 tons daily in car load lots, for which service or transportation the defendant unlawfully charged, collected and received of and from the appellant at the rate of $1.36 per ton. In the said count there is another allegation similar, except Chicago is made the point to which the coal was carried, and another allegation setting the time during April, May, June, July, August, September, October, November and December, 1883, and Kensington and Chicago being the destination, alleging that by force of the statute appellant has sustained damages and has the right to recover three times the amount.

It seems as though the pleader had designedly framed the allegations in such a way as not to explicitly bring himself under the provisions of the statute. It is not stated in the count that the freight mentioned was the "like quantity of freight of the same c'ass." It is stated that the coal shipped for the Central Illinois Company was in train loads, while the coal shipped for the appellant was in car load lots; nor is it stated that the coal used was of the same size or class, or that

the coal itself was of the same class of freight.    Although it might ordinarily be inferred that it was, both being coal, yet there might be circumstances connected with the two that would place it in different classes.    There is no general averment on this point to cover it.    The fact also that the Central Illinois Coal Company shipped by the train load and the appellant only by the car load might make a material difference to the appellee in the cheapness with which it could ship.    It might not, however, but the allegations do not clearly bring the case within the provisions of the statute against unjust discrimination.    The cars may have been of a very different size, and the cars used in shipping the appellant's coal might have been much more expensive to use and of a different class.

This is a penal statute and it should be made clearly to appear that the precise statutory offense had been committed, as the rules applicable to penal statutes require.    C., B. & Q. R. R. Co. v. The People, 77 Ill. 443.    In the above case the court say, that a count in the declaration charging unjust discrimination, charging a greater rate per mile for shipping one car load of horses, commonly called ponies, from Quincy to Macomb, than for another party from the same starting point to Chicago, for one car load of horses; the court say that this count was bad for the reason that it did not sufficiently charge that it was a like quantity of freight of the same class.    There was no averment as to the weight of the animals, or their numbers or sizes, or class of the cars containing them, or otherwise.    " The section itself recognizes the fact of there being railroad cars of different classes and numbers in defining unjust discrimination in respect to the cars.    It provides that they be of the same " class or number."    We therefore think that this count is also bad and that the demurrer was properly sustained.    We now come to the fourth count in the declaration, which in substance is as follows: That the appellee under an agreement with the Central Illinois Coal Company agreed in substance that it would transport between the points named in the other counts of the declaration, the coal of the said Central Illinois Coal Company, for a

compensation of 30 per cent. of the price for which the said company should sell the coal in the market, but the freight was not to be less than 75 cents per ton, but might be more if the selling price should produce more, the Central Illinois Coal Company guaranteeing to ship 50,000 tons the first year and 75,000 tons during the second year, the agreement running two years from December 1, 1882.

The averment in this count that appellee carried coal at a less rate than charged for appellant's coal must be understood, in view of all the averments in the count, to mean that the coal was shipped under the agreement, and that the per cent. of the sales received by appellee produced a rate of freight less than that charged appellant per ton over the same distance. The amount of coal shipped by the appellant at the various times charged in the declaration is not stated. The dates are given but the amount shipped at each time, five or six times, is omitted. It is merely stated that it was shipped in car load lots at $1.36 per ton. We infer then, that at least there were two car loads shipped at each time as the plural is used—" car load lots." It is not necessary to recite all the conditions of this contract and set out in the count, as what is shown is enough to illustrate the principle on which the decision is based. We do not think that the freight received on shipments of coal under such an agreement as this, when, as a result of the market it produced less freight per ton than charged appellant, can be regarded as a violation of the statute. We do not think that under the circumstances stated a comparison can be instituted in such manner as to render appellee liable under section three of the act against unjust discrimination. Such section was not framed in view of such state of affairs, and the shipments were not of like quantities. It may be a case of unjust discrimination; the proof might show it to be such, but the burthen of proof is on the appellant. There is no allegation that this was not a *bona fide* contract or that it was a device to evade the statute. The court below did not err in sustaining the demurrer to the declaration. The judgment is therefore affirmed.