J. A. BARRIS & COMPANY, Appellants, v. THE CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY.

**Carriers:** RATES MADE BY RAILROAD COMMISSION: *Damages.* A shipper is not concluded, as to the reasonableness of shipping rates, by the schedule of rates adopted by the railroad commissioners under Acts Twenty-second General Assembly, chapter 28, section 17, providing that such schedules shall, in all suits brought against any railroad corporation doing business within the state wherein its charges for transportation of any freight are involved, be deemed, in all courts of the state, as *prima facie* evidence that the rates therein fixed are reasonable and just maximum rates, and the fact that the rates charged by the company do not exceed those fixed by the schedule does not prevent recovery of damages under section 9, as for overcharge. Distinguishing *McGrew v. Railway Comp iny* (Mo. Sup.) 21 S. W. Rep. 463; *Sorrell v. Railway Comp iny,* 75 Ga. 509.

*Appeal from Pottawattamie District Court.*—HON. N. W. MACY, Judge

SATURDAY, MAY 22, 1897.

DURING June, and up to July 20, 1893, the plaintiff firm shipped over defendant's line of road, in carload lots, sand from different points in Iowa to Creston, Iowa, for which the company received payment. This action is to recover overcharges, being in excess of reasonable rates, it being averred that such excess is in the sum of three hundred and thirteen dollars and thirty-eight cents, the recovery being sought in three times that sum, under the provisions of chapter 28, Acts Twenty-second General Assembly. The answer

is a denial of excessive charges, and it is pleaded that the rates charged were those fixed by the board of railway commissioners of Iowa, because of which no cause of action accrued. Upon the trial, the district court gave judgment for defendant, and the plaintiff appeals.—*Reversed.*

*Harl & McCabe* and *Spencer Smith* for appellants.

*Wright & Baldwin* for appellee.

GRANGER, J.—The facts appear mainly by stipulation. The schedule of rates as provided by the board of railroad commissioners of this state, and in operation from 1889 to March 1, 1893, fixed the rate for sand the same as for soft coal. By a provision of the tariff rates that took effect March 1, 1893, the classification of sand was changed to class E, which gave it a higher rate. Because of a complaint to the commissioners, of which the defendant company had notice, on July 20, 1893, sand was changed to its former classification, with a rate the same as soft coal. The difference in the schedule rates between that of soft coal and class E which the company received makes the excess of charges for which this suit is brought, and hence it will be seen that the rates charged did not exceed the rates specified in the commissioners' schedule of rates. The district court found the rates charged to be actually unreasonable, but held that, as the rates charged did not exceed the schedule rates, there could be no recovery; and we are to determine the correctness of the holding as to the effect of the schedule rates. It is the provisions of chapter 28, Acts Twenty-second General Assembly, that give rise to plaintiff's cause of action, if it is to be sustained. Sections 2 and 9 of the act are as follows:

"All charges made for any service rendered or to be rendered in the transportation of passengers or property in this state, as aforesaid or in connection therewith or for the receiving, delivering, storage or handling of such property shall be reasonable and just; and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful."

"In case any common carrier subject to the provisions of this act shall do, cause to be done, or permit to be done any act, matter or thing in this act prohibited, or declared to be unlawful, or shall omit to do any act, matter or thing, in this act required to be done, such common carrier shall be liable to the person or persons injured thereby, for three times the amount of damages sustained in consequence of any such violation of the provisions of this act, together with costs of suit and a reasonable counsel or attorney's fee to be fixed by the court in which the same is heard on appeal or otherwise, which shall be taxed and collected as part of the costs in the case; provided that in all cases demand in writing on said common carrier shall be made for the money damages sustained before suit is brought for recovery under this section and that no suit shall be brought until the expiration of fifteen days after such demand."

As there is no controversy over the question of fact as to the charges being unreasonable, considered independent of the act in question, if there is nothing in the act to affect the result, the sections quoted justify a recovery, for section 9 in terms creates a liability for doing any of the acts prohibited by the chapter, and section 2 in terms prohibits the taking of unreasonable rates. Section 17 of the act contains the following provision: "The board of railroad commissioners of this state are hereby empowered and directed to make for each of the railroad corporations,

doing business in this state, as soon as practicable, a schedule of reasonable maximum rates of charges for the transportation of freight and cars on each of said railroads, and said power to make schedules shall include the power of classification of all such freights, and it shall be the duty of said commissioners to make such classification; provided, that the said rates of charges to be so fixed by said commissioners shall not in any case exceed the rates which are or may hereafter be established by law; and said schedules so made by said commissioners shall, in all suits brought against any such railroad corporations, wherein is in any way involved the charges of any such railroad corporation for the transportation of any freight or cars or unjust discrimination in relation thereto, be deemed and taken in all courts of this state as *prima facie* evidence that the rates therein fixed are reasonable and just maximum rates of charges for the transportation of freight and cars upon the railroads for which said schedules may have been respectively prepared." We think it is nowhere claimed. that the commissioners' schedule is intended to deprive the railway company of reasonable rates for transportation of freight; that is, if the schedule makes a rate that is less than reasonable, the company may recover the reasonable rate, and in any action by the company to recover a rate in excess of the schedule rate the only effect of section 17 would be to make the schedule rate *prima facie* reasonable, so that the company must overcome that effect by proof. The language of section 2 is that "all charges * * * shall be reasonable and just." It is no more restrictive than permissive. It fixes the rights of both parties by a re-enactment of the common law. Confessedly, section 17 does not operate to the prejudice of the company, if the commissioners shall err in judgment, and fix a rate less than what is reasonable. It seems

to us the section has the same force and effect as to both parties. If the commissioners err in judgment, and fix a rate too high to be reasonable, why should the shipper be required to pay it, or the company, if it receives it, be permitted to keep it? It will be seen that section 17, when carefully read, does not attempt to deal with facts or conditions that are conclusive, but those that are *prima facie* only. Largely, its office is to fix a rule of evidence. That is one of the purposes of the act, as indicated by its title. It is likely true that the purpose of the act, as to evidence, may have been intended more for proceedings before the commissioners than in courts; but it is equally true that it does fix a rule of evidence in courts. Some authorities are cited and relied on in support of appellee's position, which we should notice. The one apparently most relied on is reported in *Chicago, B. & Q. R. Co. v. People*, 77 Ill. 443. The statutes, so far as material, in that state and this, are so similar that a holding by that court to the effect that an observance of the schedule rate by the company would defeat a recovery for charges in excess of a reasonable rate would be a direct and high authority on the subject in this state. But, as we understand, a majority of the members of that court expressly dissent from such a conclusion. The opinion in that case, in which the conclusion of the majority is announced, deals only with such a question, barring, perhaps, a question of pleading. In that opinion the constitutionality of the act is not considered. Two members of the court dissent from the "reasoning of the opinion" which went to the proposition we are considering, and they "especially" dissent so far as the opinion may *assume* the constitutionality of the law. Their concurrence in the conclusion is placed, evidently, on the unconstitutionality of the law. Two of the other justices dissent from both the

reasoning and conclusion, so that but three members are left to concur in the reasoning of the opinion, being a minority. If the case can be said to be an authority on this particular question, we think it sustains our view; but it is probably fair to say that, because of the different grounds on which rest the different conclusions, the case is not valuable as authority. The rule of appellee's contention is sustained in a somewhat recent case in Missouri. *McGrew v. Railway Co.* (Mo. Sup.) 21 S. W. Rep. 463. That case is made to turn on certain provisions of the Revised Statutes of that state of 1889, the opinion citing some of the sections from 2631 to 2639. We have examined the statutes, and find no similar provision to ours as to the effect of scheduled rates. In section 2639 we find language to the effect that when rates are established in accord with the provision of the act it shall be unlawful for the carrier to receive either more or less than the established rate, except when specially permitted so to do. This particular language is not referred to in the opinion in the Missouri case, but that case cites *Sorrell v. Railway Co.*, 75 Ga. 509; and the Missouri case, speaking of the Georgia case, says it was decided "under a statute almost exactly like the statute under consideration, where a suit was brought against a railroad company on account of alleged overcharges beyond a reasonable rate. It was held that, as the declaration did not allege either that no rates had been fixed for the defendant road, or that the charges were beyond the rates so fixed, it was demurrable." The statute of Georgia (Code, section 719f) provides that the schedule shall "be deemed sufficient evidence that the rates therein fixed are just and reasonable rates." The court, in its opinion, after citing the statute, says: "Thus the statute law of the state fixes, through commissioners appointed therefor, just and reasonable

rates of freight, and makes these schedule rates evidence, and sufficient evidence, of the justness and reasonableness of the freights exacted by the railroad companies in all the courts of this state." It will be seen that the statutes in which the rulings were made in Missouri and Georgia are so unlike ours as to make the holdings therein of no force in construing ours. These are the only authorities cited on this question from any court of appeals. With the language of our statute, we are not in doubt as to a proper conclusion. It would seem to be a strange construction to so construe the language of the law as to make the schedules but *prima facie* as to the carrier and conclusive as to the shipper. Equality before the law is the correct rule, and should obtain in the absence of a clear legislative intent to the contrary.

Appellant has discussed the right to recover triple damages. Appellee has not discussed that proposition, and, indeed, there seems to be but little room for discussion under the language of the law. The right to such damages seems to follow a right of recovery. The judgment is REVERSED.