## UNITED STATES v. BERNSTEIN et al.

(District Court, D. Nebraska.   June 8, 1920.)

1. **War ⊜4—Food control amendment enacted under war powers.**
   The amendment of October 22, 1919, to the Lever Act, prohibiting unreasonable charges for necessaries, was enacted under the war powers, since no peace has been proclaimed, though actual hostilities have ceased.

2. **War ⊜4—Acts under war powers subject to constitutional restrictions.**
   Measures enacted under war powers must stand the test of constitutional limitations, and they fall, if rights guaranteed by the Constitution are thereby infringed.

3. **Constitutional law ⊜278(1)—Eminent domain ⊜2(1)—Fixing price for sale is depriving of property.**
   The right to freely sell commodities in course of trade is inherent in ownership, and is ultimately and actually the property, so that the amendment of October 22, 1919, to the Lever Act, forbidding unreasonable charges for necessaries, violates Const. Amend. 5, by depriving of property without due process of law and without compensation.

4. **Criminal law ⊜13—Food control amendment does not define offense.**
   The amendment of October 22, 1919, to the Lever Act, which forbids unreasonable charges for necessaries, without defining what is an unreasonable charge, is insufficient to inform the accused of the nature of the accusation against him, as required by Const. Amend. 6.

5. **Conspiracy ⊜25—Food Control Act, punishing conspiracy, invalid.**
   The provision of Lever Act Aug. 10, 1917, as amended October 22, 1919, denouncing conspiracies to exact excessive prices for necessaries, is invalid, since a conspiracy must involve a common purpose to do an unlawful act, or a lawful act by wrongful means, and the sale of private property, not devoted to public use, for whatever price it will bring, is not unlawful.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conspiracy.]

Louis Bernstein and another were indicted for violating the Lever Act as amended.   Demurrer to indictment sustained.

T. S. Allen, U. S. Atty., of Lincoln, Neb., and Frank Peterson, Asst. U. S. Atty., of Omaha, Neb.

W. F. Gurley, of Omaha, Neb. (David A. Fitch and Arthur Rosenblum, both of Omaha, Neb., on the brief), for defendants.

WOODROUGH, District Judge.   In one of the counts defendants are charged with a violation of the provision of the Lever Act, as amended, which declares:

"That it is hereby made unlawful for any person willfully * * * to make any unjust or unreasonable rate or charge in handling or dealing in or with necessaries. * * * Any person violating any of the provisions of this section upon conviction thereof shall be fined not exceeding $5,000 and be imprisoned for not more than two years, or both." 41 Stat. 298, c. 80, § 2.

The count is demurred to on the ground that the provision of the act is in contravention of the Fifth and Sixth Amendments to the federal Constitution, and, the count of the indictment being in due form, the question is squarely submitted whether that part of the law quoted is valid and enforceable.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] It is of the utmost difficulty to approach consideration of this question unmoved by rancor and bitter resentment against the hordes of profiteers whose cold-blood rapacity and greed multiply the burdens and sufferings of the Great War. Nor can it be doubted that the letter and spirit of the law in question are directed at the root of a great and menacing evil. Undoubtedly, if in every sale of necessaries the price could be forced down to a level that disinterested, impartial men would agree upon as fair and just, the benefits to the country in these critical times of reconstruction would be incalculable. Though actual combat has ceased, no peace has been proclaimed with Germany, and conditions incidental to the war may well have justified as drastic legislation by the Congress as did the continuance of hostilities in the field. There is no doubt in my mind that this law must be regarded and considered as a war measure to the same extent as though no armistice had been signed.

[2] But, although in time of war patriotic citizens voluntarily waive the rights, privileges, and immunities guaranteed them by the Constitution, nevertheless, when such rights guaranteed by the Constitution are invoked before this court, no exigencies of war, or incidents or aftermath of war, can justify their denial. The validity of war measures must equally stand the test of constitutional limitations, and must fall, if rights guaranteed by the fundamental law are infringed or taken away.

[3] The value of an individual citizen's property right in such necessaries as he handles, or deals in, derives, almost entirely, from his right to freely sell them according to the course of trade and commerce. An incident of such trade and commerce between individuals is the fixing of a price. In the large, the price is said by economists to be fixed in the course of commerce by the "higgling of the market," which term comprehends within it the incidents of all individual sales, where the infinitely varied elements of personality of competiton, of time, circumstance, and condition, enter into the price fixing.

As to all such property, therefore, in the hands of individual citizens, that is strictly private property, and does not come within the category of "property clothed with a public interest," this right inherent in ownership to sell it at a price so fixed is ultimately and actually the property of the citizens, as to which the Fifth Amendment to the Constitution declares:

"Nor shall any person * * * be deprived of * * * property, without due process of law; nor shall private property be taken for public use, without just compensation."

The underlying purpose and the actual effect of this law is to deprive the citizen of his essential right of property in such necessaries as are included in its scope, and this without due process of law and without just compensation. The law denounces the making "of an unjust or unreasonable rate or charge," and would leave the question as to the injustice or unreasonableness of any particular price to the jury that may be called to pass on it. Thus the fairness of

the price is not to be determined by the processes of commerce operative at the time, but by the ex post facto inquiry of the jury.

It is urged that, under the war-time conditions to which this law applies, many of the forces that tend to make prices fair in peace times, and which are all included in that "higgling of the market" referred to, are disordered and weakened, and so callous avarice and heartless plundering of the profiteers runs riot. Nor can the measure of truth in this contention be denied. These immoralities are flagrant, and cannot be palliated nor minimized, and no government can merit the confidence of the people which does not exert its just powers to the utmost to effect a remedy.

But this law, which makes it a crime for a man to sell his private property, not clothed with a public interest, for the best price he can get in the ordinary course of trade and commerce, without coercion, without extortion (which includes the element of wresting by force), without wrongful combination or confederation or conspiracy, without undue influence, without misrepresentation, without any fraud recognized by law—this law cannot be sustained, while the Constitution forbids the taking of private property for public use without just compensation, and insures that no person shall be deprived of his property without due process of law.

[4] Again: The Sixth Amendment to the Constitution prescribes that in all criminal prosecutions the accused shall enjoy the right to be informed of the nature and cause of the accusation against him. In my judgment the form of the law (with which the count of the indictment corresponds) fails to prescribe a rule of conduct with any such certainty as this constitutional requirement contemplates. As laid down by the Supreme Court in United States v. Brewer, 139 U. S. 278, 288, 11 Sup. Ct. 538, 541 (35 L. Ed. 190):

"Laws which create crime ought to be expressed, that all men subject to their penalties may know what acts it is their duty to avoid."

This law seeks to abolish the criterion of fairness, upon which prices have heretofore depended in private business, and to establish a new one. But the new criterion is not defined. It is reposed in the varying conscience of jurors who are to conduct the inquiry ex post facto. It must be conceded that many generic, broad descriptions of offenses have become definite, and are upheld and enforced, and it is not in all cases easy to determine when an accused is informed of the nature and cause of the accusation. It would unduly extend this memorandum to review the many intricate and difficult problems presented to the courts under this constitutional provision. I do not find any adjudications, however, in the Supreme Court, which appear to me to conflict with my conclusion that the law in question contravenes the Sixth Amendment and is void for that reason.

The United States District Court in Kentucky, exercising in that state the same jurisdiction as does this court within the state of Nebraska, approved the following enunciation of the law by the Court of Appeals of Kentucky:

"The chief question to be considered is the one affecting the validity of the statute, the provisions of which are found in sections 816 and 819 of the Kentucky Statutes. The first-named section reads as follows: 'If any railroad corporation shall charge, collect or receive more than a just and reasonable rate of toll or compensation for the transportation of passengers or freight in this state, or the use of any railroad car upon its track, or upon any track it has control of or has the right to use in this state, it shall be guilty of extortion.' * * * That this statute leaves uncertain what shall be deemed a 'just and reasonable rate of toll or compensation' cannot be denied, and that different juries might reach different conclusions, on the same testimony, as to whether or not an offense has been committed, must also be conceded.

"The criminality of the carrier's act, therefore, depends on the jury's view of the reasonableness of the rate charged, and this latter depends on many uncertain and complicated elements. That the corporation has fixed a rate which it considers will bring it only a fair return for its investment does not alter the nature of the act. Under this statute it is still a crime, though it cannot be known to be such until after an investigation by a jury, and then only in that particular case, as another jury may take a different view, and, holding the rate reasonable, find the same act not to constitute an offense. There is no standard whatever fixed by the statute, or attempted to be fixed, by which the carrier may regulate its conduct, and it seems clear to us to be utterly repugnant to our system of laws to punish a person for an act the criminality of which depends, not on any standard erected by the law which may be known in advance, but on one erected by a jury, and especially so as that standard must be as variable and uncertain as the views of different juries may suggest, and as to which nothing can be known until after the commission of the crime. If the infliction of the penalties prescribed by this statute would not be the taking of property without due process of law, and in violation of both state and federal Constitutions, we are not able to comprehend the force of our organic laws.

"In Louisville & Nashville R. R. Co. v. Railroad Commission of Tennessee, 16 Am. & Eng. R. R. Cases, 15, a statute very similar to the one under consideration was thus disposed of by the learned judge (Baxter): 'Penalties cannot be thus inflicted at the discretion of a jury. Before the property of a citizen, natural or corporate, can be thus confiscated, the crime for which the penalty is inflicted must be defined by the law-making power. The Legislature cannot delegate this power to a jury. If it can declare it a criminal act for a railroad corporation to take more than a "fair and just return" on its investments, it must, in order to the validity of the law, define, with reasonable certainty what would constitute such "fair and just return." The act under review does not do this, but leaves it to the jury to supply the omission. No railroad company can possibly anticipate what view a jury may take of the matter, and hence cannot know in advance of a verdict whether its charges are lawful or unlawful. One jury may convict for a charge made on a basis of 4 per cent., while another might acquit an accused who had demanded and received at the rate of 6 per cent., rendering the statute, in its practical working, as unequal and unjust in its operation as it is indefinite in its terms.'

"The Supreme Court of the United States, in Railroad Commission Cases, 116 U. S. 336 [6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636], refers to this Tennessee case and substantially approves it by distinguishing the case then before the court from the Tennessee case. The case is also used to support the text in 8 Am. & Eng. Ency. of L. p. 935, where it said: 'Although a statute has been held to be unconstitutional which left it to the jury to determine whether or not a charge was excessive and unreasonable in order to ascertain whether a penalty is recoverable, yet where the action is merely for recovery of the illegal excess over reasonable rates this is a question which is a proper one for a jury.'

"Mr. Justice Brewer, in the case of Chicago, etc., R. R. Co. v. Day [C. C.] 35 Fed. 866 [1 L. R. A. 744], had under consideration the provisions of a statute similar to the one we have before us, and, while the statute was upheld, it was only because there was a schedule of rates provided in the act

which rendered the test of reasonableness definite and certain. The learned judge then said: 'Now the contention of complainant is that the substance of these provisions is that, if a railroad company charges an unreasonable rate, it shall be deemed a criminal and punished by fine, and that such a statute is too indefinite and uncertain, no man being able to tell in advance what in fact is or what any jury will find to be a reasonable charge. If this were the construction to be placed upon this act as a whole, it would certainly be obnoxious to complainant's criticism, for no penal law can be sustained unless its mandates are so clearly expressed that any ordinary person can determine in advance what he may and what he may not do under it.' In Dwar. St. 652, it is laid down 'that it is impossible to dissent from the doctrine of Lord Coke that acts of Parliament ought to be plainly and clearly and not cunningly and darkly penned, especially in legal matters.' See, also, United States v. Sharp, Pet. C. C. 122 [Fed. Cas. No. 16,264]; The Enterprise, 1 Paine, 34 [Fed. Cas. No. 4,499]; Bish. St. Cr. § 41; Lieb. Herm. 156. And the learned judge concludes that there is very little difference between a provision of the Chinese Penal Code, which prescribed a penalty against any one who should be guilty of 'improper conduct,' and a statute which makes it a 'criminal offense to charge more than a reasonable rate.' The same learned judge, discussing the kindred subject of unreasonable differences in rates, in Tozer v. United States (C. C.) 52 Fed. 917, said: 'But in order to constitute a crime the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty.'

"When we look to the other side of the question we find the contention of the state supported by neither reason nor authority. No case can be found, we believe, where such indefinite legislation has been upheld by any court where a crime is sought to be imputed to the accused. * * * In Railroad, etc., v. People, 77 Ill. 443, in construing a certain section of the statute of that state, its Supreme Court said: 'That section, by itself, makes the offense to consist in taking more than a fair and reasonable rate of toll and compensation, without reference to any standard of what is fair and reasonable. In such case, it may be seen, different persons would have different opinions as to what is a fair and reasonable rate. Courts and juries, too, would differ, and at one time or place a defendant might be convicted and fined in a large amount for the same act which, in another place or at another time, would be held to be no breach of the law, and what might be thought a fair and reasonable rate on one road might be considered otherwise upon another road. There would be no certainty of being able to comply with the law. A railroad corporation, with purpose of conforming to the law, might fix its rates at what it believed to be reasonable, and yet be subjected to the heavy penalties here prescribed.' * * * "

This expression of the law conforms to my own conclusions, and confirms me in the opinion that the law here in question is void. The demurrer to this count of the indictment must therefore be sustained.

[5] There is another count of the indictment laid under the conspiracy section of the Lever Act, denouncing conspiracies to exact excessive prices for necessaries. I am of the opinion that this provision of the act is subject to the same vice as that above considered. It assumes to make it a crime for citizens to arrange to sell their goods at the prices the goods will sell for in the course of trade and commerce, without regard to the means to be employed in the sale. Although conspiracy differs in many respects from crimes in general, and a purpose formed in common by more than one person may be fraught with danger and involve punishment from which a single individual is exempt, still the gist of the offense is always the common

purpose to do an unlawful act, or a lawful act by wrongful means. Either the act or the means must be wrongful.

This count of the indictment, conforming to the terms of the act, does not charge as the common purpose an unlawful act, nor wrongful means to accomplish lawful ends, and the demurrer thereto must also be sustained.