ST. LOUIS, ALTON AND TERRE HAUTE RAILROAD CO.

v.

GEORGE W. HILL ET AL.

1. RAILROAD DISCRIMINATIONS—CHARTER GRANTED BY STATE.—The "right to fix rates of tariff with such discriminations as to it may seem to be most conducive to the interests of its road," granted to a railroad company in its charter by the State, must be construed as being with an implied limitation or restriction that the railroad shall, in fixing the rates of tariff, make them reasonable, and not extortionate, and that it shall in making discriminations make such only as are reasonable and just.

2. DISCRIMINATIONS AT COMMON LAW.—At common law all discriminations by common carriers are not forbidden, but only those which are unreasonable and unjust. As they are carriers for hire indifferently for all persons, they are required to serve all who properly apply for transportation in the order of their applications. Authorities differ as to whether the common law rule against unjust and arbitrary discrimination, requires an equality of

charge. The weight of American authority, however, is that the common law requires that the charges must be equal to all, for the same service of transportation under like circumstances.

3. DIFFERENCE IN DISTANCE.—There is no requirement of the common law, that when there is a difference of distances in the services performed, the charge of the common carrier shall be proportioned equally to the respective distances; or that when the greater charge is made for the greater distance, it shall bear any given proportion to that made for the shorter distance.

4. CONSTRUCTION OF STATUTE.—The seven specified acts of discrimination in section three of the statute, define the offense of unjust discrimination "such" as is to "be deemed and taken" as "the unlawful discriminations prohibited by the provisions of the act," and the clause "This section shall not be construed so as to exclude other evidence tending to show any unjust discrimination in freight and passage rates" the court regards as treating of the matter only in its evidential aspect and not as intended to expand the definition of the offense so as to include any discrimination in freight or passenger rates that the court or jury may *deem* unjust. It is the intent of the clause not to confine the plaintiffs to the *simple fact* which makes the *prima facie* case, but allow them to introduce "other evidence tending to show" the discrimination involved in the *prima facie* case was unjust.

5. DISCRIMINATIONS—DIFFERENCE IN DISTANCE.—Where the distance from A to B was 14 miles and of C to B was 28 miles and the schedule of reasonable maximum, freight rates established by the commissioners for appellant's railroad was $14.22 per car load from A to B and $17.58 from C to B and the railroad company charged $17.40 per car load for the latter distance and $5.00 for the former. *Held*, that this was no unjust discrimination within the provisions of the act of 1873.

6. UNJUST DISCRIMINATION.—Where appellant charged appellees two cents more per hundred pounds per car load for carrying certain wheat from C to B than it charged others for wheat shipped from C and consigned to and delivered in the B elevator in B. *Held* that this case falls directly within the provisions of the statute. The right of the corporation to compel the shipper, under the penalty of a higher rate of toll, to ship his freights to a particular consignee can not be admitted, and the alleged difference of delivery on the track and delivery into an elevator in detention of cars does not afford a just ground for such discrimination.

7. PLEADING.—When a defendant demurs to a replication to a plea and the demurrer is overruled, and he traverses the replication and goes to the country, he can not raise the legal question presented by the demurrer.

ERROR to the Circuit Court of St. Clair county. Opinion filed May 16, 1884.

Mr. R. A. HALBERT, for appellant; as to extortion, cited C.,

St. L., A. & T. H. R. R. Co. v. Hill et al.

B. & Q. R. R. Co. v. The People, 77 Ill. 419; C. & A. R. R. Co. v. The People, 67 Ill. 11.

As to whether at common law the common carrier was bound to charge the same rate for the same services to all customers: Hutchinson on Carriers, § 302, note; 2 Redfield on Railways, 5th ed., 95; T. W. & W. Ry. Co. v. Elliott, 76 Ill. 67; Rogan v. Aiken, 9 Am. & Eng. Ry. Cases, 201; Vincent v. C. & A. R. R. Co., 49 Ill. 44; C., B. & Q. R. R. Co. v. Parks, 18 Ill. 464.

The charter given to the railroad by the State is a contract: I. C. R. R. Co. v. McLean Co., 17 Ill. 291; Neustadt v. I. C. R. R. Co., 31 Ill. 484; I. C. R. R. Co. v. Goodwin, 94 Ill. 262; C., B. & Q. R. R. Co. v. Iowa, 94 U. S. 161; C. & A. R. R. Co. v. The People, 67 Ill. 11; Ruggles v. The People, 91 Ill. 256; I. C. R. R. Co. v. The People, 95 Ill. 313.

Appellant, in making discriminating rates, is protected by its charter against legislative interference: C., etc., R. R. Co. v. Iowa, 94 U. S. 161; Peik v. C., etc., R. R. Co., 94 U. S. 176; Stone v. Mississippi, 101 U. S. 816; Binghampton Bridge Case, 3 Wall. 72; Miller v. State, 15 Wall. 511; Planters Bk. v. Sharp, 6 Howard, 327.

Messrs. G. & G. A. KOERNER, for appellees; that at common law the common carrier was not compelled to treat all persons equally, but he must charge only reasonable rates, cited Directors Great West. Ry. Co. v. Sutton, 4 E. & I. App. (H. L. ) 226.

Competition is no excuse for discrimination: C. & A. R. R. Co. v. The People, 67 Ill. 11.

BAKER, J. The statement, one is a common carrier, *ex vi termini* imports a duty to the public, and a corresponding legal right in the public; a right common to all.

One of the duties imposed upon the common carrier is, that he is bound to carry for a reasonable remuneration, and is not allowed to make unreasonable and excessive charges. He can not, like a merchant or mechanic, consult his pleasure or caprice· in the conduct of his business, and can not, even by

special agreement, receive an excessive and extortionate price for his services.

Another duty imposed on him is to make no unjust, injurious or arbitrary discriminations between individuals in his dealings with the public. The right to the transportation services of the common carrier is a common right, belonging to every one alike: Sanford v. Railroad Co., 24 Penn. St. 378; Shipper v. Penn. R. R. Co., 47 Id. 338; N. E. Express Co. v. M. C. R. R. Co., 57 Maine, 178; McDuffie v. Railroad, 52 N. H. 430; C. & N. W. Ry. Co. v. The People, 56 Ill. 355.

It is urged by counsel that the provisions of the extortion and unjust discrimination act of 1873, at least so far as it has reference to the subject of discriminations, is inoperative as regards the appellant corporation.

The ground for this claim is, that its charter is a contract between it and the State, and that by that charter it was given the " right to fix the rates of tariff with such discrimination as to it may seem to be most conducive to the interests of its road." Does this provision by its express terms, and to the exclusion of any implied qualification, vest the corporation with plenary power to discriminate at will in its rates of toll? In the case of Ruggles v. The People, 91 Ill. 256, it was held that an express grant of power in the charter of a railway company to fix the rates of tolls to be charged, and to alter and change the same, does not confer unlimited power, but only the right to charge reasonable rates; and that what is a reasonable maximum rate may be fixed by statute.

In the case of The Illinois Central R. R. Co. v. The People, 95 Ill. 313, it was held that the act of May 2, 1873, to prevent extortion and unjust discrimination in railroads, is a constitutional enactment, and not in violation of the contract between the State and the railroad companies, growing out of the granting and accepting of their charters, containing power to establish such rates of toll for the conveyance of persons and property as they shall, from time to time, direct and determine in their by-laws. These decisions have both been affirmed by the Supreme Court of the United States. We must, in analogy to these cases, hold that the right to fix rates

of tariff with such discriminations as to it seem to be most conducive to the interests of its road, granted appellant in its charter, is with an implied limitation or restriction, that appellant shall, in fixing the rates of tariff, make them reasonable and not extortionate; and that it shall in making discriminations, make such only as are reasonable and just, and not such as are arbitrary, unreasonable and unjust.

The main controversy in this suit is upon the charge of unjust discrimination. The gravamen of the supposed offense, as respects the shipments of flour is, that the distance from Belleville to East St. Louis is fourteen miles, and the distance from New Athens to East St. Louis twenty-eight miles; that from the first day of January, 1876, to the eighth day of December, 1879, appellees shipped over appellant's railroad from New Athens to East St. Louis, 982 car loads of flour, of 100 barrels each, for which appellant charged $17.40 a car load, which was a greater compensation per car load per mile, than it charged for the transportation of a like quantity of freight of the same class, transported during the same time in the same direction over a same portion of its road of less distance, to wit, from Belleville to East St. Louis, the toll from Belleville to East St. Louis being $5.00 per car load. The schedule established by the railroad and warehouse commissioners for appellant's road, of reasonable maximum freight rates on flour, from New Athens to East St. Louis, 28 miles, was $17.58 per car load, and from Belleville to East St. Louis, 14 miles, $14.22 per car load. The amount charged appellees was uniformly $17.40, being 18 cents per car load less than the rate fixed by the commissioners. The evidence shows that during the period covered by the declaration the rates on flour on appellant's road from Belleville to East St. Louis fluctuated greatly, and ranged from $5 to $10 per car load.

The grounds claimed by appellant to justify the discriminations made by it in favor of west bound freights from Belleville are, in brief, that Belleville was a large distributing and consuming point for goods shipped from East St. Louis, and that having the empty cars there it could do a return business from Belleville, without the ordinary expense

incident to an out business from a small station, and could get loads and pay both ways; that the grades from New Athens to Belleville were long and heavy, while from the latter place to East St. Louis a train would run almost of its own momentum, and that consequently from ten to twenty loaded cars could be taken by an engine from Belleville, additional to those hauled from New Athens, and at no appreciable additional expense; and that there being three competing lines of railway between Belleville and East St. Louis, and there being, during the time covered by appellees' shipments, a war, primarily between the Illinois & St. Louis and the southeastern companies, in rates on flour, bran and grain, appellant was compelled, in order to accommodate and retain its customers, to haul from Belleville at the current and fluctuating cut rates, although they were not remunerative.

There is some conflict in the authorities as to the extent to which the common law rule goes in prohibiting discriminations by common carriers. They all agree, that all discriminations are not forbidden, but only those which are unreasonable and unjust. They also all agree, that as they are carriers for hire indifferently for all persons, there are some discriminations they may not make, and they are required to serve all who properly apply for transportation, and in the order of their applications. The point of friction in the authorities is, as to whether the common law rule against unjust and arbitrary discriminations requires an equality of charge. Some of the courts hold, in substance, that all have the right to the same carriage and at a reasonable price for the service performed, but that the commonness of the duty to carry for all, does not involve a commonness or equality of compensation or charge; and that all the shipper can ask the carrier is that he shall charge him no more than a reasonable sum. Fitchburg R. R. Co. v. Gage, 12 Gray, 393; Johnson v. P. & P. R. Railroad Co., 16 Fla. 623.

The English authorities are to the effect that at common law the common carrier is not bound to carry at equal rates for all customers in like condition; and the English cases to the contrary, cited by the appellees, are based either upon

some general or special statute. However, the decided weight of American authority holds that the common law requires that the charges must be equal to all for the same service of transportation under like circumstances. Sanford v. R. R. Co. *ante;* Shipper v. Penn. Co. *ante;* McDuffie v. R. R. *ante;* Rogan v. Aiken, 9 Am. & Eng. Ry. Cases, 201; Messenger v. Penn. R. R. Co., 36 N. J. L. 407; Vincent v. C. & A. R. R. Co., 49 Ill 33; C. & N. W. Ry. v. The People, 56 Id. 365; C. & A. R. R. Co. v. The People, 67 Id. 11.

The common law rule as announced in these cases is an inhibition of a different compensation from various persons for the same or an identical service under identical conditions. In Smith's Leading Cases p. 174, the rule is stated by him to be that the hire charged must be no more than a reasonable remuneration to the carrier, and, consequently, not more to one than to another for the same service. In the case of the Chicago & Alton Road v. The People, the doctrine of the common law as to prohibited discriminations was broadly stated, and it was held to apply as between different communities or localities as well as between different individuals of the same town, and to include the case of the same or a greater charge for the shorter of two given distances, the shorter distance being a part of the greater distance; and it would seem the rules necessarily include this, as it is mathematically true both that the whole includes the part and that the part is not equal to the whole. But we know of no decided case that holds or suggests that, from the standpoint of the common law and that only, a greater charge for the greater distance is unjust discrimination, upon the ground, the proportionate charge per mile is greater for the longer distance than it is for the shorter. The charging of a less price for the same or a greater service creates a presumption that the person who is charged the greater sum for the same or a less service has paid more than a fair and reasonable rate. But, from the fact the greater price is paid for the greater distance, there is no presumption that more than a fair and reasonable rate is paid, even though the rate per mile is more; and this because there is an element that enters into the con-

sideration for the greater amount so paid that does not enter into the consideration for the smaller amount paid for the shorter distance. There is nothing with which to compare this element of consideration, and thereby ascertain whether or not the discrimination in average rate per mile is arbitrary and unreasonable. There is, then, no requirement of the common law that the carrier's tolls for different services, and where the greater toll is for the greater service, shall be proportioned, or at a given rate per mile.

The second section of the act of 1873 prohibits "any unjust discrimination in rates or charges of toll or compensation;" and the third section of the act states seven specified acts of discrimination as respects rates or charges, and then provides that "all such discriminating rates, charges, collections, or receipts, whether made directly or by means of any rebate, drawback or other shift or evasion, shall be deemed and taken, against such railroad corporation, as *prima facie* evidence of the unjust discriminations prohibited by the provisions of this act." There can be no just or even plausible claim that the discriminations made by the appellant in its charges on flour are included in any of the specified acts of discrimination designated in this section three.

The prohibition of section one of the act, is as general and comprehensive against the receipt of more than a fair and reasonable rate of toll, as the prohibition of section two is against any unjust discrimination in rates of toll. And the language of section three as regards the specified acts of discrimination, is identical with that used in section eight in respect to the schedule of reasonable maximum rates of charge, *i. e.*, that both "shall be deemed and taken as *prima facie* evidence." In the case of C., B. & Q. R. R. Co. v. The People, 77 Ill. 443, it was held that a disregard of the schedule is a necessary element of the offense of extortion against which the statute is directed, and that the schedule is something more than evidence and is a fact upon which the action rests. As sections three and eight are, as respects the point in question, the same in their phraseology, and as section three performs a like function for section two, as section eight does

for section one, it must needs follow that the specifications found in section three are something more than evidence, and are the facts upon one or another of which, the action under the statute for unjust discrimination must rest. We conclude then from the logic of the case cited, that the seven specified acts of discrimination in section three define the offense of unjust discrimination " such " as is to " be deemed and taken " " as ". " the unlawful discriminations prohibited by the provisions of the act."

In fact, the Supreme Court in their opinion say: " The statute defines, in section three in respect to unjust discrimination, as it provides in section eight in respect to reasonable rates, what shall be deemed and taken as *prima facie* evidence of the unjust discriminations prohibited by the act." And in the dissenting opinion it is said, "We hold that the averments contained in the 20th count show a violation of the second and third sections of the act, and that it is good. Those sections define the offense of unjust discrimination, and the averments show that the offense was committed." We understand these as plain intimations that the offense inhibited by these sections and against which the heavy penalties of the statute are denounced, is one that falls within one or another of the cases mentioned in section three.

This section three not only defines and fixes the boundaries of the statutory offense, but provides what shall be *prima facie* evidence of its commission, and makes the fact itself of " such " discrimination, such *prima facie* evidence. Then, after a provision regarding an excuse or justification by the corporation on the ground of competition, follows the clause, "This section shall not be construed so as to exclude other evidence tending to show any unjust discrimination in freight and passage rates." This clause we regard as treating of the matter only in its evidential aspect and not as intended to expand the definition of the offense so as to include any discrimination in freight or passenger rates that the court or jury may *deem* unjust. The *prima facie* case, made by proof of one or another of the discriminations specified in the section, is of course subject to rebuttal, not only by denial of the fact of the

discrimination charged, but by showing the discrimination was not unjust; and so, it is the intent of this clause, not to confine the people or the plaintiffs to the *simple fact* which makes the *prima facie* case, but allow them to introduce "other evidence tending to show" the discrimination involved in the *prima facie* case, was unjust. And so, also, in furtherance of this object, section eight provides that the schedules of reasonable maximum rates of charges made by the commissioners shall, in all suits wherein is in any way involved the question of unjust discrimination in relation to charges for transportation, be deemed and taken as *prima facie* evidence of what are reasonable maximum rates. The schedules would have no tendency to prove the particular act of discrimination charged, but only a tendency to show the act was unjust, as being based on a charge in excess of a maximum reasonable rate.

The inhibition of this clause is not against the exclusion of evidence tending to show any *other unjust discrimination*, but against the exclusion of any *other evidence* tending to show any unjust discrimination, *i. e.*, other evidence, cumulative to that afforded by the *prima facie* case, to demonstrate any discrimination alleged and within the definition of the offense was in truth *unjust*. We can not suppose the legislative intention was, by the general language used either in section two or in this clause of section three, to give full and plenary power to the courts by judicial legislation to say what is and what is not an unjust discrimination as respects charges for freight. There would be too wide a latitude afforded for differences of opinion and of conclusion, and the hazard to important rights and large property interests would be extreme. The magnitude both of the public and the private interests involved in the issue, and the heavy penalties, fines and forfeitures imposed by the statute, alike forbid it to be judicially considered that these general and vague expressions have such expansive and ill-defined effect.

By section two the scope of the statute, as respects discriminations, is expressly limited to discriminations in rates or charges of toll, or compensation. Even if it be true, that

either by force of section two or of the clause in section three, all discriminations in charges of toll that are by the common law unjust and illegal are embraced and brought within the statute, yet, as we have seen, the sole and only rule of the common law in that behalf is the same service to all and for the same service the same reasonable compensation.

This doctrine has been applied in cases where there were special contracts to carry for one to the exclusion of others, and in cases where there was an inequality of charge for the same service. If the rule be extended to its utmost limit, and so as to include all cases falling within the principle upon which it is founded, it would seem such cases are all included in the *prima facie* cases stated in section three. There is no mandate of the common law, that when there is a difference of distances in the services performed, the charges of the common carrier shall be proportioned equally to the respective distances and at a uniform rate per mile; or that when the greater charge is made for the greater distance, it shall bear any given proportion to that made for the shorter distance.

If we go beyond that which we have stated as the common law rule, and beyond the cases designated in the statute, where is the line to be drawn? The charge per car load having been lowered a certain sum from Belleville to East St. Louis, what reduction did the law require appellant to make in its tolls for west bound freights from stations east of Belleville? Was the rate per mile per car the test? Or, was the charge to be lowered the same sum from all other stations? Or, was the rate to be lowered for all longer distances in accordance with the sliding scale of the railroad commissioners? Or, was the reasonable cost of the transportation beyond Belleville to be added to the Belleville charge? A difference in amount of toll from any named station to any two given stations involves necessarily the fact of a discrimination. But where, in the absence of an equality of service, and also of an express statutory enactment, does the domain of unjust discrimination begin? The answers to these several questions might be as numerous and as variant as the courts or juries before whom they might arise. As was suggested

by the Supreme Court in the Chicago, Burlington & Quincy case, there would be no certainty of the railroad companies being able to conform to the law, and they would be left in a state of uncertainty and danger, and exposed to injustice.

Our conclusion then is, that the facts disclosed by the record show no unjust discrimination within the provisions of the act of 1873, in the amounts collected from appellees for the transportation of the 982 car loads of flour from New Athens to East St. Louis.

The charge of unjust discrimination in the transportation of one hundred and forty-nine car loads of bran and mill stuff, stands substantially on the same footing.

The charge of unjust discrimination as respects wheat is, that the appellant corporation charged appellees two cents more per hundred pounds, per car load, for carrying two millions eighty-three thousand two hundred and twenty-three pounds of wheat from New Athens to East St. Louis, than it charged others for wheat shipped from New Athens and consigned to, and delivered in the East St. Louis elevator. One of the specifications of unjust discrimination in section three of the act, is where the railroad company shall charge, collect or receive from any person or persons, for the transportation of any freight upon its railroad, a higher or greater rate of toll or compensation than it shall, at the same time charge, collect or receive from any other person or persons, for the transportation of the like quantity of freight of the same class, being transported from the same point, in the same direction, over equal distances of the same railroad. The case, as regards the shipments of wheat, would seem to fall directly within this provision of the statute. The right of the corporation to compel the shipper, under the penalty of a higher rate of toll, to ship his freights to a particular consignee, can not be admitted. The alleged difference of delivery on the track and delivery into an elevator in detention of cars, does not afford a just ground for such discrimination. The usual time allowed to unload a car is twenty-four hours from the date of notice of arrival, and the rule is to charge $5.00 per day for a car if not unloaded in this twenty-four hours.

St. L., A. & T. H. R. R. Co. v. Hill et al.

This demurrage charge of $5.00 a day for delay is made alike to all consignees, and whether the delivery is on track or in elevator; and must be presumed to be the fair and reasonable compensation for such delay. If two car loads of wheat are delivered, the one to a consignee on the track and the other to an elevator, and there is a delay of one day in unloading, as to each of these cars, the justice of imposing upon the one a penalty of $5.00 and two cents in addition for each hundred pounds of wheat, and upon the other the penalty of $5.00, and that only, is not perceived; and if each of the two consignees unloads his car within the reasonable time allowed for such service, and with equal promptness, it is manifestly an arbitrary discrimination to say the shipper to the one consignee shall pay two cents more per hundred pounds for his car load of wheat than the shipper to the other pays. According to appellant's mode of conducting its business in this behalf, even were the car on the track unloaded within one hour after arrival, and the car at the elevator not unloaded within twenty hours thereafter, yet there would be a heavy charge for delay to the first and no charge whatever for delay to the latter. If the railroad company has not sufficient tracks accessible for teams for the prompt delivery of all the car loads of freight it may carry, then it is its duty to provide such tracks; or, at all events, it must not charge the shipper or consignee for damage and delay caused by its own want of proper facilities to do with promptness the business it undertakes to do. The two cents additional charge on each one hundred pounds of wheat seems only ostensibly a charge for delay of cars, and in reality an unjust discrimination in rates of toll, to force appellees to make their shipments to a particular consignee or class of consignees.

There are several counts in the declaration for extortion. The rates on bran and on wheat collected by appellant were in excess of the reasonable maximum rates of charges permitted by the schedule prepared for appellant's road by the railroad and warehouse commissioners. And we find no evidence in the record to overcome the *prima facie* case thus made out.

Appellant insists the replication to its plea of the Statute

of Limitations is bad in law. The question is not properly before us for decision. When a defendant demurs to a replication to a plea and the demurrer is overruled, and he traverses the replication and goes to the country, he can not raise the legal questions presented by the demurrer. It may be doubted, however, if the evidence sufficiently sustains the replication, such as it is.

The judgment of the circuit court was in favor of appellees for $12,500, and this was greatly in excess of the amount they were entitled to recover. The rulings of the circuit court upon the instructions and otherwise, so far as they conflict with the views herein expressed, we hold to be erroneous.

The judgment is reversed and the cause remanded.

Reversed and remanded.

WALL, P. J. took no part in the decision of this case.