## Swift & Company v. Patrick Ronan.

1. MASTER AND SERVANT—*What Risks Servant Assumes.*—The rule that the servant assumes the ordinary risks incident to the business, presupposes that the master has performed the duties of caution, care and vigilance which the law casts upon him. It is those risks alone that can not be obviated by the adoption of reasonable measures of precaution that the servant assumes.

2. SAME—*What Risks the Servant Does Not Assume.*—The law is that the servant does not assume risks that are unreasonable, or extraordinary, nor risks that are extrinsic to the employment, nor risks of

the master's own negligence. The master's own duty to the servant is always to be performed. The neglect of that duty is not a peril which the servant assumes.

3. SAME—*Whether Risks Are Assumed by Servant is a Question of Fact.*—Whether the risks, in any particular case, are the ordinary risks which the servant assumes, is a question of fact to be determined by the jury from the evidence in the case, under the instructions of the court. ·

4. SAME—*Duty to Furnish Reasonably Safe Place to Work is a Continuing Duty.*—It is the duty of the master, in the first instance, to furnish the servant a reasonably safe place to work; and it is a continuing duty, which is not discharged if the master, by subsequent negligence, makes such place unsafe.

5. SAME—*Independent Contractors.*—The master is not liable for injuries caused to a servant through the negligence of an independent contractor.

6. COMMON CARRIER—*Defined.*—A common carrier is one who plies between certain termini, and openly professes to carry goods for all such persons as choose to employ him.

**Action on the Case**, for personal injuries. Appeal from the City Court of East St. Louis; the Hon. SILAS COOK, Judge presiding. Heard in this court at the February term, 1902. Affirmed. Opinion filed September 11, 1902.

This was an action of trespass on the case brought by appellee against appellant, to recover damages for personal injuries received by plaintiff by reason of the alleged negligence of the defendant while in its service.

A trial was had which resulted in a verdict finding the defendant guilty and assessing the plaintiff's damages at $2,500.

A remittitur of $500 was entered by appellee, whereupon the court rendered judgment on the verdict for $2,000, from which the defendant appealed.

Appellant operated an extensive slaughtering and packing plant near East St. Louis. It was inclosed by a high fence. Inside the inclosure were railroad tracks, cars, buildings, etc. One of these buildings was a large packing house, with a platform in front, and a track parallel and adjacent to the platform. At the time of his injury, appellee was employed as a laborer, in a refrigerator car standing on said track in front of the platform, placing salt, with a shovel, upon pieces of meat as they were stacked in the car.

Other cars were on the track. A locomotive engine belonging to the St. Louis National Stock Yards Company and then employed by appellant and operating inside of its inclosure, forcibly struck one of these cars standing on the same track. The impetus of the contact was communicated through other cars until it reached the said refrigerator car, forcibly and suddenly propelling it three or four feet, and thereby throwing appellee against the handle of the shovel which he was using, thereby producing an inguinal rupture on his right side.

The declaration contains one count. After the usual formal allegations of ownership, user, etc., and the employment of plaintiff as a laborer, it charges that it was the duty of appellant to provide a reasonably safe place for plaintiff to work in, and that while he was in the discharge of his duty in said car, and exercising ordinary care and diligence, the defendant wrongfully and negligently caused or permitted a locomotive engine to be backed or run on the track and against cars standing thereon some distance from the refrigerator car, and drove them with great force and violence against the refrigerator car, in which plaintiff was at work, and thereby threw him with great violence against the shovel and the truck, and then against the jamb of the door, and in the jerk and fall the plaintiff was strained and ruptured, and permanently injured, etc.

Defendant pleaded the general issue.

The errors assigned are as follows:

1. The court below erred in giving improper instructions on behalf of appellee.

2. The court erred in refusing to give to the jury proper instructions asked by appellant.

3. The court erred in refusing to give to the jury the peremptory instructions asked by appellant at the conclusion of the whole evidence in the case, directing the jury to find appellant not guilty.

4. The court erred in overruling appellant's motion for a new trial.

5. The verdict is excessive.

6. The court erred in rendering judgment on the verdict against appellant.

A. & J. F. LEE and C. E. POPE, attorneys for appellant.

The mere relation of master and servant can never imply an obligation on the part of the master to take more care of a servant than he may reasonably be expected to take of himself. The Karr Supply Co. v. Kroenig, 167 Ill. 560; Priestly v. Fowler, 3 M. & W. 1; Penn. Co. v. Lynch, 90 Ill. 333.

Appellee, being acquainted with the risk of the place where he was required to work, and, with this knowledge, continuing to work without objection, assumed the risk, and can not complain if he was subsequently injured by exposure to such risks. East St. Louis Ice & Cold Storage Co. v. Crow, 155 Ill. 74; Stafford v. C., B. & Q. Ry., 114 Ill. 244; Missouri Furnace Co. v. Abend, 107 Ill. 44; C. & A. R. R. Co. v. Munroe, 85 Ill. 25.

FREELS & JOYCE, attorneys for appellee.

The rule that the servant assumes the ordinary risks incident to the business presupposes that the master has performed the duties of caution, care and vigilance which the law casts upon him. It is these risks alone, which can not be obviated by the adoption of reasonable measures of precaution by the master, that the servant assumes. The law is, that the servant does not assume risks that are unreasonable or extraordinary; nor risks that are extrinsic to the employment; nor risks of the master's own negligence. City of LaSalle v. Kostka, 190 Ill. 135.

The master's duty to the servant is always to be performed. He can not delegate that duty to an employe and thereby relieve himself from liability to another servant for an injury caused by its neglect. The neglect of that duty is not a peril which the servant assumes. C., B. & Q. R. Co. v. Avery, 109 Ill. 322; C. & A. R. Co. v. Maroney, 170 Ill. 525; C. & E. I. R. Co. v. Kneirim, 152 Ill. 461; Pullman Palace Car Co. v. Laack, 143 Ill. 243; City of LaSalle v. Kostka, 190 Ill. 135.

These duties of the master to use ordinary care to fur-

nish the servant a safe place to work and to keep it safe, and to give him notice of unusual danger which the master knows or ought to know, and the servant does not know, are primary and are not assignable. Norton v. Volzke, 158 Ill. 409; C. & E. I. R. Co. v. Kneirim, 152 Ill. 461; Ill. Steel Co. v. Schymanowski, 162 Ill. 461; Hess v. Rosenthal, 160 Ill. 628; Pullman Palace Car Co. v. Laack, 143 Ill. 243; C. & A. R. Co. v. Maroney, 170 Ill. 525.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

It is clear from the evidence that contributive negligence on the part of appellee is not a factor in the case. It is also clear that somebody was negligent or the jam of the car would not have occurred. With this preliminary statement the reasons urged for reversal of the judgment will be considered.

It is urged that the damages are excessive.

The jury assessed appellee's damages at $2,500. Upon the suggestion of the court, a remittitur of $500 was entered and judgment rendered for $2,000. The evidence, if true, shows that before the injury, appellee was a strong, hearty man, capable of performing heavy labor, and was earning $2.10 per day; that by the injury he was ruptured, and since then has been compelled to wear a truss, and is incapable of doing hard work; that at his age of fifty-three years the chances of a cure are limited, without an operation, which would be of doubtful utility, and not advisable unless the hernia became strangulated, in which case it would be necessary to save his life; that at times, in consequence of the injury, appellee is compelled to quit work for several days, and that when at work his bowels sometimes come down, causing suffering and annoyance. From this evidence we can not say that the damages are excessive.

It is not assigned as error that the court admitted improper testimony for appellee, or excluded proper testimony offered by appellant. The contention of counsel for appellant upon these points is therefore not before us for review.

It is urged that the collision of the cars was one of the

risks assumed by appellee in his employment. If it was caused by negligence, it was not a risk that was assumed. The servant assumes only the ordinary risks incident to his employment, and negligence of the master is not one of these risks.

"The rule that the servant assumes the ordinary risks incident to the business, presupposes that the master has performed the duties of caution, care and vigilance which the law casts upon him. It is these risks alone that can not be obviated by the adoption of reasonable measures of precaution, that the servant assumes." Pantzar v. Tilly Foster Mining Co., 99 N. Y. 376; Booth v. Boston & Albany R. R. Co., 73 N. Y. 40; Noyes v. Smith & Lee, 28 Vt. 64.

"The law is that the servant does not assume risks that are unreasonable, or extraordinary, nor risks that are extrinsic to the employment, *nor risks of the master's own negligence.*" City of LaSalle v. Kostka, 190 Ill. 135.

"The master's own duty to the servant is always to be performed. The neglect of that duty is not a peril which the servant assumes." C., B. & Q. R. R. Co. v. Avery, 109 Ill. 322; C. & A. R. R. Co. v. Maroney, 170 Ill. 525.

Whether the risks, in any particular case, are the ordinary risks which the servant assumes, is a question of fact to be determined by the jury from the evidence in the case, under the instructions of the court. If the collision of the cars which injured appellee had been so great as to have telescoped and crushed the car in which he was employed, it would be clear that such a risk was not an ordinary risk which appellee assumed. Whether a collision, so sudden and violent as to throw him forcibly against the handle of his shovel, and thereby cause a rupture, was a risk which appellee assumed, was for the jury to answer, and which they have answered in favor of appellee.

In view of the evidence in this case, we can not find differently without invading the province of the jury.

But one instruction was given for appellee, which is as follows:

"The court instructs the jury that it is the duty of the master to use reasonable care to furnish a reasonably safe place for the servant to work while in the performance of the service required of him; and if the jury believe from

the evidence that the defendant has failed to discharge its
duty in this behalf, as charged in the declaration, and that
the plaintiff while in the exercise of ordinary care in the
discharge of his duty, and without notice of the danger,
was injured by reason of the negligence of the defendant,
as charged in the declaration, then the jury may find for
the plaintiff, and assess his damages, if they believe from
the evidence that he has sustained any damages, at such
sum as they believe from the evidence to be reasonable
compensation for the injury so sustained, not, however, to
exceed the amount sued for."

Against this instruction appellant urges as error, that
while the declaration avers that it was the duty of appel-
lant " to furnish the plaintiff with a reasonably safe place
to work," that it does not charge negligence in not doing
so. This criticism is upon the sentence quoted and is
hypercritical. It was the duty of appellant in the first
instance, to furnish appellee a reasonably safe place to work;
it was a continuing duty, which was not discharged if
appellant, by subsequent negligence, made it unsafe. C. &
E. I. R. R. Co. v. Kneirim, 152 Ill. 461.

If subsequent negligence of appellant, aptly charged in
the declaration, caused the injury of appellee, thereby ren-
dering the place where he worked unsafe, it was not neces-
sary to specifically aver this result of the negligence.

The proximate cause of the injury was the collision of a
car against the car in which appellee was working. The
collision was the natural result of the impact of the loco-
motive against a car, communicated through other cars
standing on the same track. When the declaration alleged
this impact of the locomotive and its result upon the refrig-
erator car and upon appellee, it was not necessary to aver
specifically that it rendered the refrigerator car unsafe and
that thereby appellant was liable. If appellant is liable,
his liability is sufficiently averred by charging the initial
act of negligence, which was the proximate cause, oper-
ating through connected agencies, visible and plain of com-
prehension.

We fail to see how the statement criticised, is error,

when considered in connection with the evidence and the remainder of the instruction, or how it could in any way have misled the jury.

Seventeen instructions were given for appellant, covering every phase of the case. Some of them were more favorable to appellant than the law warrants. A slight modification of the seventeenth instruction, which is assigned for error, is not referred to in appellant's brief. The assignment may therefore be considered as waived. The modification, however, was not material and was not error.

An instruction was asked, directing the jury to find for defendant. It is the stereotyped *pro forma* instruction now asked in most cases of personal injury. It falls under the criticism stated in Central Ry. Co. v. Knowles, 191 Ill. 241.

There is evidence in this case, clearly tending to establish the cause of action. It was not, then, error to refuse the instruction.

The pivotal issue in the case, as we comprehend the evidence, is whether or not appellant is liable for the negligent act of the St. Louis National Stock Yards Company, which caused the collision of the cars. Appellant contends that the Stock Yards Company was an independent contractor for whose negligence it is not liable. Appellee contends that the relation of master and servant existed between appellant and the Stock Yards Company, and that the company was using appellant's tracks inside the inclosure, while working for appellant, and under the orders of appellant's yard master.

There is some conflict in the evidence as to whether the refrigerator car belonged to appellant, or to "Swift's Refrigerator Line" a different corporation. We do not regard this as material, since it is undisputed that appellant was using it at the time of the injury, for loading meat, and put appellee, its employe, to work in it.

If the St. Louis National Stock Yards Company was working as an independent contractor on the 3d of November, when appellee was injured by the collision caused by

its locomotive, then appellant is not liable for the negligence of the Stock Yards Company as a servant of appellant. Hexamer v. Webb, 101 N. Y. 377; Shearman & Redfield on Neg., Sec. 162.

What was the relation of the National Stock Yards Company to appellant?

It appears from the evidence that the National Stock Yards Company worked only at appellant's plant, and under its directions. Chas. T. Jones, the manager of the National Stock Yards Company, testified:

"Q. Under whose control was the switching crew of the St. Louis National Stock Yards when working at and around the plant of Swift & Company on the 3d of November, 1900? A. Under Swift & Company's instructions.

Q. I will ask you what control the St. Louis National Stock Yards had over that crew when working in the yard of Swift & Company? A. We have no control over it; it is there subject to their orders."

Cross-examination:

"What part of their time was spent at Swift & Company's and what part elsewhere? A. It is all spent at Swift & Company's; in their business.

Q. Is that engine used nowhere else? A. No sir; on their own business.

Q. Don't they take cars out of other places? A. To and from their plant only.

Q. Do you mean to say that at that time there was an engine that did work at Swift's plant alone—did work nowhere else? A. Yes, sir.

Q. Do you mean to say that the Stock Yards Company had no control over this engine? A. Not while they were at Swift's.

Their instructions came from Swift's yardmaster to the foreman of the crew, to switch cars any place they want them.

\*      \*      \*      \*      \*      \*      \*

Q. Do you mean to say that Swift & Company were at liberty to discharge or employ these men? A. They merely controlled the engine crew while there.

Q. They told them what they wanted in the way of what cars to put in and what cars to take out? A. Anything that was to be done at their plant.

\*      \*      \*      \*      \*      \*      \*

Q. Don't you know that this crew did its work in its own way—that they were told at Swift & Company's what they were to take out and bring in? A. They were instructed how to switch cars.

Q. That was all? A. Yes, sir."

Wm. Beasley, foreman of the switching crew, testifies:

" Q. Please state, Mr. Beasley, whether or not Swift & Company, on the 3d of November, 1900, had a yardmaster there? A. Yes, sir; L. H. Hartwell was the yardmaster at that time.

Q. What did he do there as yardmaster? A. Well, he directed the work.

Q. Directed what work? A. Well, see that the cars were properly placed to unload, and for loading.

Q. Under whose control are you when working inside the yard of Swift & Company? A. Well, sir, under the control of Swift & Company's yardmaster. We never got in there without an order. As long as we were in Swift & Company's yard we were under the control of Swift & Company's yardmaster. * * * We went to Swift & Company's plant at seven o'clock in the morning, and when not pulling cars, stayed by the little office up in the yards, the car repairer's office; that is Fitzpatrick's office; he is foreman of the car department. We would wait there when we had nothing to do to be in readiness to go to work if anything should turn up. As long as we were in Swift & Company's yard we were under the control of Swift & Company's yardmaster; but when we got over to the National Stock Yards, our yardmaster over there, the general yardmaster, he might say, go and do something, and of course we would not refuse him. We were under the jurisdiction of Swift & Company's yardmaster, that is what I was told when I was put in charge of an engine. He did not direct me how to do the work as long as I got it done; they did not direct me how to do it."

Both these witnesses testify that the manner of working the engine in doing its work was left to the crew.

We think this evidence shows that the National Stock Yards Company was not employed as a common carrier and that the law as to common carriers, cited by appellant, does not apply.

Webster defines a common carrier as " one who under-

takes for hire to transport goods from one place to another."

Anderson's Law Dictionary, p. 150, "one who undertakes for hire or reward, to transport the goods of such as choose to employ him, from place to place."

Wood on Railways, Vol. 3, p. 1876, "one who plies between certain termini, and openly professes to carry goods for all such persons as choose to employ him."

What, then, was the character of the Stock Yards Company? There is no evidence that it contracted to do any specific work for appellant. It was subject to its orders to move cars when and where required. When not engaged it waited for orders in appellant's inclosure.

Appellant cited from Roberts & Wallace on The Liability of Employers, p. 14, four characteristics of a master, as follows:

1. The engaging of a servant.
2. The payment of wages.
3. The power of dismissal.
4. The control of the servant's actions.

All these tests may be applied under the evidence, and the results will tend to prove that the Stock Yards Company was a servant of appellant. It is not material that this corporation selected and paid its own employes. The corporation itself was the servant of appellant. It worked for appellant. The presumption is that it was paid for its work. There is nothing to indicate that it could not have been discharged by appellant at its pleasure. It worked under the orders of appellant's yardmaster. If it was the servant of appellant, the negligence of its employes would be actionable against appellant to the same extent as if its employes had been directly employed by appellant.

We think the testimony of Jones and Beasley shows that the relation of the Stock Yards Company to appellant was that of an employe, or servant, for doing certain kinds of work when ordered, and not that of an independent contractor.

The facts in the cases of Coal Run Coal Co. v. Strawn, 15

Bradwell, 347, and Foster v. Wadsworth-Howland Co., 168 Ill. 514, cited by appellant to sustain his contention that the Stock Yards Company was an independent contractor, are different from the facts as presented by the evidence in this case, and the decisions do not, therefore, sustain the contention.

It would needlessly extend this opinion to examine and differentiate them at length.

The judgment of the Circuit Court is affirmed.