## THE WIGGINS FERRY COMPANY

*v.*

## THE EAST ST. LOUIS UNION RAILWAY COMPANY.

*Filed at Springfield October 1, 1883.*

1. EAST ST. LOUIS—*charter construed, as to grant of streets for railroads.* Section 20 of the charter of the city of East St. Louis, authorizing the city council to make any contract or arrangement with any street or horse railroad company for the use of any street, etc., provided the consent, in writing, of the owners of three-fourths of the property per lineal foot fronting on such streets, etc., be first obtained, applies exclusively to the street or horse railroads strictly so called, and has no application to railroads contemplated in the general Railroad law.

2. HORSE AND DUMMY RAILROADS—*chapter 66 of the Revised Statutes does not provide for their incorporation.* Chapter 66 of the Revised Statutes, entitled "Horse and Dummy Railroads," does not provide for the incorporation of companies to build and operate this class of railroads. It simply extends the provisions of the act to such companies as had been, or might thereafter be, incorporated under the general laws of the State. The incorporation of such companies is provided for in section 1, of chapter 32, entitled "Corporations," and it is doubtful whether the general Railroad law (chapter 114) has any application to such roads.

3. RAILROAD—*whether assent of lot owners is necessary to enable a railway to use a public street.* Under the general law relating to railroads, it is only necessary to procure the assent of the municipal authorities of a city to authorize a railroad company to construct its track or tracks over or along a public street therein. That act, as revised in 1874, does not require

the assent of the abutting lot owners, and in the absence of any special statutory provision requiring such assent it will not be necessary.

4. In cities, towns or villages organized under the general Incorporation law, which requires such assent, or under special charters containing a similar provision to that in the general law, this rule does not apply, and the assent of the requisite number of the abutting property owners will be required, as well as that of the municipality.

5. SAME—*may be of limited extent, and may limit its business.* A railway company may organize under the general Railroad law to construct its road exclusively within the limits of a city, for the purpose of transferring, in railroad cars, freight between the different depots, warehouses, elevators, manufactories, etc., that are or may be on its line, or may be reached by its lateral branches. Such business is such as is usually done by railway companies. If such company elects to carry freight only, it will be under no obligation to carry passengers, and *vice versa.* And so if it holds itself out as a carrier of a particular kind of freight, or of freight generally, prepared for carrying in a particular way, it will only be bound to carry to the extent and in the manner proposed.

APPEAL from the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.

Mr. R. A. HALBERT, for the appellant, among many other points, contended that a railroad company could not legally be organized where its termini were within the limits of a street in a city  Powers granted a private corporation are to be strictly construed.

Under the general Incorporation law of 1872, cities and villages are denied the power to grant the use of or the right to lay down any railroad tracks in any street, except on petition of the owners of the land representing more than one-half of the frontage of the street sought to be used. (Section 62, paragraph 90.) The charter of the city, which is special, gives the city council no power to grant its streets to railroads, without the consent, in writing, of the owners of three-fourths of the adjacent lots. Private Laws 1869, vol. 1, p. 904, sec. 20; *Pitzman* v. *Village of Freeburg,* 92 Ill. 111.

The recent legislation of this State shows, as does the special charter, that the fee of the streets is not fully vested

in the city, so as to enable it to grant them to a railroad corporation. The building of a railroad upon a highway is an additional servitude, and compensation must be made therefor. *Indianapolis, Bloomington and Western R. R. Co.* v. *Hartley*, 67 Ill. 439.

An injunction lies in this case on two grounds: First, the taking or damaging of private property without compensation; and second, the unlawful or excessive use of corporate powers by a private corporation. *Cobb* v. *Indianapolis and St. Louis R. R. Co.* 68 Ill. 233.

Property can not be taken for public use until compensation therefor is ascertained and paid. (*People* v. *McRoberts*, 62 Ill. 38; *City of Chicago* v. *Barbian*, 80 id. 483.) And an injunction lies if an attempt to do so is made. High on Injunctions, 622.

The supposed ordinance is void. It is farming out a public highway for fifty years to a private corporation. Streets can not be used for speculation by the city, and the council has no power to pass such ordinance, and it is absolutely void. *Davis* v. *Mayor of New York*, 14 N. Y. 506; *Milhon* v. *Short*, 17 Barb. 435; *Same* v. *Same*, 27 N. Y. 621; *Gager* v. *Georgetown*, 6 Wheat. 593; *State* v. *Cincinnati Gas Co.* 18 Ohio, 262; *Britton* v. *Mayor*, 21 How. Pr. (N. Y.) 251; *Illinois Canal Co.* v. *St. Louis*, 2 Dillon, C. C. 87.

Messrs. G. & G. A. Koerner, for the appellee:

When a corporation owns the fee of the streets by its charter, the local authorities are invested with exclusive control over them, and if those authorities grant permission to locate railway tracks along a street, the owners of property fronting thereon can not enjoin the laying of such tracks. *Moses* v. *Pittsburg, Ft. Wayne and Chicago R. R. Co.* 21 Ill. 516.

It is a legitimate use of a street or highway to allow a railroad track to be laid down in it. *Murphy* v. *City of Chicago*, 29 Ill. 279.

When the fee remains in abutting land owners, the corporation may grant the right to a railway company to lay its tracks therein, but at the peril of the railroad company. If a laying its tracks causes private injury to land owners, it must make good the damages sustained. *Hartley* v. *Indianapolis, Bloomington and Western R. R. Co.* 67 Ill. 445.

A city may authorize the laying of a railroad track in its streets. This may even be done by resolution. When a city has conveyed a street to a railroad company, that conveyance is operative to the extent the city has power, viz: to give to the company the right to construct, maintain and operate its railroad in the streets. *City of Quincy* v. *Chicago, Burlington and Quincy R. R. Co.* 92 Ill. 21.

In Illinois, cities are given exclusive control of all streets and alleys within the corporate limits. The fee of the streets is in the corporation, and the dominion over them is as absolute as that of the owner of other lands. *Cairo and Vincennes R. R. Co.* v. *The People*, 92 Ill. 174.

If the fee in the streets is in the public, or in the city for public use, and not in the abutter, the legislature may authorize them to be used by a railroad company in the construction of its road without compensation to the adjoining owners or the city, and without the consent, and even against the wishes, of either. 2 Dillon on Mun. Corp. 556.

It is the settled law that a railroad in the street is not, *per se*, a nuisance, and being authorized by the proper authority, it is. to be regarded as rightfully in the use of the street so long as it does not exceed the limits of its grant, nor unnecessarily hinders and obstructs the ordinary travel. Angell on Highways, 242; *Commonwealth* v. *Erie and N. E. R. R. Co.* 27 Pa. 339; Redfield on Railways, sec. 76; *Lexington* v. *Applegate*, 8 Dana, 288; *Regina* v. *Train*, 9 Cox, 180; *New Albany* v. *O'Dailley*, 12 N. 557.

Mr. M. MILLARD, for the appellant, in reply.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The East St. Louis Union Railway Company, the appellee, is a railway corporation organized under chapter 114 of the Revised Statutes of 1874, known as the "Railroad and Warehouse act." As appears from its articles of incorporation, the object of its organization was to construct and operate a single and double track railroad in this State, from the north to the south end of Front street, in the city of East St. Louis. After its organization the city of East St. Louis passed an ordinance granting the company permission to construct and operate its road along and over Front street, as contemplated by its articles of incorporation. When, in pursuance of this grant, the company was about to lay down its tracks, the Wiggins Ferry Company, the appellant, filed the present bill, alleging, among other things, the complainant was the owner of more than three-fourths of the real estate abutting on said Front street; that it was a large tax-payer of the city; that it had not petitioned for the passage of the ordinance granting the right of way, nor had it given its consent to the construction of the proposed railroad over the street, and prayed for an injunction restraining the company from laying down its tracks, or otherwise using the street for the purpose in question. The company answered, admitting most of the facts charged in the bill, and declaring its purpose to proceed without delay to lay down its tracks and operate the road, in pursuance of the city's grant, as in the bill alleged. Upon the filing of the bill a temporary injunction was awarded, which, upon the final hearing, was dissolved, and a decree entered dismissing the bill, to reverse which the complainant brings this appeal.

This suit is brought upon the legal hypothesis that the permission of the municipal authorities alone did not authorize the company to construct and operate its road in one of the public streets of the city in the manner and for the pur-

poses proposed, alone, but that in addition to this the company was bound to obtain the assent of the requisite number of the abutting property owners, which it is conceded was not done in this case.   The trial court held, as matter of law, that under the circumstances of this case it was not necessary to obtain the assent of the abutting lot owners, or any portion of them, to warrant the company in constructing and operating its road in the manner proposed,—that for such purpose the grant of the right of way by the city was all that was required,—and this ruling of the trial court presents the main question for determination on this appeal.

It is to be observed, in the first place, the city of East St. Louis is incorporated under a special charter, (see vol. 1, Private Laws 1869, page 904,) and the only provision in it relating to the subject under consideration is found in section 20, which is as follows :   "The city council is hereby authorized to make any contract or arrangement with any street or horse railroad company for the use of any street, highway or alley, for any length of time not exceeding twenty-five years, and for such compensation as may be agreed upon, deemed proper and beneficial to the interests of the city : *Provided,* the consent in writing of the owners of three-fourths of the property per lineal foot  fronting on such streets, etc., be first obtained."   We are of opinion this section of the charter applies exclusively to street or horse railways strictly so called, and hence it has no application to the road under consideration.

Appellee contends the road in question is a railroad within the meaning of the general Railroad act, under which it was organized, and bases its right or claim to corporate existence exclusively upon that act, and denies that it comes within the category of roads known as  horse, dummy or street railways.   To say the least of it, it is a matter of grave doubt whether the consolidated act of 1874, entitled "Railroads and Warehouses," has any application to this latter class of roads,

or whether persons associated for their construction or opera-
tion can lawfully incorporate at all under that act. Nor
does chapter 66 of the Revised Statutes, entitled "Horse and
Dummy Railroads," provide for the incorporation of that
class of companies, but simply extends the provisions of the
act to such companies as have been or may thereafter be
incorporated under the general laws of the State, and the
only special provision we have found in the statute relating
to their incorporation is found in the first section of chapter
32, entitled "Corporations." It is there provided "that horse
and dummy railroads   *   *   *   may be organized and con-
ducted under the provisions of that act." This special pro-
vision in the general Incorporation act would seem to indicate
a purpose on the part of the legislature to treat horse and
dummy railways, at least in some respects, as a distinct
class of roads, and this purpose on the part of the legislature
is further manifested in certain provisions found in the Rail-
road and Warehouse act. That act, as consolidated in the
revision of 1874, consists of a number of statutes, passed by
the legislature at different times, but each having in view
the accomplishment of some particular object or objects.
While the terms of the first section of the act seem to be
sufficiently broad to embrace horse and dummy railways,
which we regard as falling within the general description
"street railways," yet in other subdivisions of the act this
class of roads is expressly excluded from its operation. (See
sections 77 and 95, chapter 114, Hurd's compilation.) Tak-
ing all these provisions of the statute together, it is extremely
questionable whether street railway companies, strictly so
called, can be lawfully organized at all, except under chapter
32, of the Revised Statutes, entitled "Corporations." But
since, as we have already seen, appellee bases its whole right
or claim to corporate existence under the Railroad and Ware-
house act, it is not necessary to pass definitely upon this
question.

Recurring, then, to the main question in the case, namely, whether the assent of the abutting lot owners to the laying down of appellee's tracks was necessary, it is to be noted as a significant fact the act under which the company was organized requires no such assent. The only limitation imposed by that act is the assent of the municipality whose street is sought to be used for such purpose. (Sec. 20, chap. 114, Rev. Stat.) The same is true of horse and dummy railways. (Sec. 3, chap. 66, Rev. Stat.) The general rule unquestionably is, that in the absence of any special statutory provision requiring such assent, it will not be necessary. Of course, in towns, cities or villages organized under the general Incorporation law, which requires such assent, or under special charters containing a provision similar to that in the general Incorporation law, this general rule does not apply, and the assent of the requisite number of the abutting property owners will be required, as well as that of the municipality.

The proposed road, when completed, is to be used solely "for the purpose of transferring, in railroad cars, freight between the different depots, warehouses, elevators, manufactories, etc., that are or may be on its line, or may be reached by its lateral tracks," and the point is made that a company whose line of road is limited to a single street, and whose proposed business is so circumscribed, does not come within the purview of the act authorizing the incorporation of railway companies by general law. The argument is, that the legislature, in providing a general law on the subject, must have intended to include only such companies as would perform the ordinary functions of common carriers, and as the company in question does not propose to receive shipments of freight generally, or carry passengers at all, it is contended the appellee is not, within the meaning of the act, a railway company, and hence its supposed organization was unauthorized, and all acts done under it are illegal and void. The

proposed business of this company is clearly such as is usually, if not uniformly, done by railway companies, and we are aware of no rule of law requiring a railway track to be of any particular length, or that it should extend beyond the limits of a particular town or city, though most railroads certainly do.

Nor do we see anything in the objection that the business of the company is to be limited to the carrying of freight offered in cars only. Every common carrier has the right to determine what particular line of business he will follow. If he elects to carry freight only, he will be under no obligations to carry passengers, and *vice versa*. So if he holds himself out as a carrier of a particular kind of freight, or of freight generally, prepared for carriage in a particular way, he will only be bound to carry to the extent and in the manner proposed. He will nevertheless be a common carrier. 2 Rob. Prac. 525.

The decree of the circuit court being in conformity with the views here expressed, we perceive no ground for disturbing it.

*Decree affirmed.*