## The People of the State of Illinois, ex rel. Charles W. Thomas, v. The St. Louis & Belleville Electric Railway Company.

1. MANDAMUS—*what essential to award of.* A writ of *mandamus* will not be awarded in any case unless the relator shows a clear legal right to have the thing sought done, and in the manner asked.

2. MANDAMUS—*when does not lie to compel running of trains.* *Mandamus* does not lie to compel a railroad company to furnish certain passenger service where it does not appear that such company has the right to run its trains as prayed in the petition.

3. MANDAMUS—*when does not lie at the instance of a private citizen.* *Mandamus* will not lie on the petition of a private citizen merely to settle some doubtful question, but to entitle him to the writ he must clearly show that he has a legal right which has been denied and that the denial of such right affected his personal interests; the writ is never awarded to settle mere abstract rights unaccompanied with substantial or practical benefits.

*Mandamus* proceeding. Error to the Circuit Court of St. Clair County; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1905. Affirmed. Opinion filed September 8, 1905.

CHARLES W. THOMAS, for plaintiff in error.

SCHAEFER & FARMER, for defendant in error.

MR. JUSTICE MYERS delivered the opinion of the court.

Charles W. Thomas, relator and plaintiff in error, a resi-

dent and citizen of Belleville, filed his petition in the Circuit Court of St. Clair County for a writ of *mandamus* to compel the defendant in error to run and operate daily over its railroad, passenger cars from the public square in Belleville to the Eads bridge in East St. Louis, or to the eastern city limits of East St. Louis, at intervals of thirty minutes each way from seven o'clock in the morning until ten o'clock in the evening, or at such intervals as the court may prescribe as sufficient to accommodate the public.

It appears from the petition, admissions by answer and evidence in the record, that the defendant was incorporated and organized in 1897 under chapter 114, Revised Statutes, referred to as the General Railroad Act, and was thereby empowered to construct and operate, by mechanical power, a railway for the transportation of persons and property for hire, from Belleville to East St. Louis; that defendant constructed a double track electric railway between points mentioned, and in 1898 began the transportation of passengers over its railway in cars, propelled by electricity, from the public square in Belleville to the eastern city limits of East St. Louis, at intervals of thirty minutes from seven in the morning to ten in the evening of each day, and that it was a common carrier of passengers; that on May 5, 1899, the city council of Belleville passed ordinance No. 483 by which the defendant was permitted to operate its cars on the tracks of the Belleville Electric Railway Company from the western limits of the city to the public square; that on June 24, 1898, defendant entered into a contract with the East St. Louis Electric Street Railroad Company, which then owned and operated a railway from the east limits of East St. Louis to the Eads bridge, by which contract defendant was permitted to operate its cars over the track of the said East St. Louis Electric Railroad Company; that in 1900, and until August, 1901, defendant continuously operated and run its cars for the transportation of passengers from the public square in Belleville to the Eads bridge, using the tracks of the Belleville Electric Railway Company under the Belleville ordinance, and the tracks of the East

424 · Appellate Courts of Illinois.

Vol. 122.] The People v. St. L. & Belleville Electric Ry. Co.

St. Louis Street Railroad Company under the said contract of June 24, 1898. In August, 1901, defendant changed its business from that of a passenger carrier to freight carrier and ceased altogether to run or operate cars on its railroad for the transportation of passengers. It changed the gauge of its tracks to that required by commercial steam railroads, and ever since has been engaged in operating cars in the transportation of freight only, chiefly that of coal and lumber. By reason of the change in the gauge it is no longer possible to run cars from its tracks upon the street railway tracks of either Belleville or East St. Louis. It furthermore appears from the evidence that the St. Louis, Belleville & Suburban Railway Company constructed and operated a double track electric railway along the St. Clair county turnpike running nearly parallel with defendant's road between Belleville and East St. Louis, and run its cars from the public square in Belleville to the Eads bridge in East St. Louis. By reason of advantages in territory and location of its right-of-way the Suburban Railway Company secured the bulk of the passenger traffic, so that the business of defendant was not sufficient to pay operating expenses. This is assigned in the record as the reason for making the change from passenger to freight carrying business.

The case was tried by the court upon amended petition and answer. The prayer of the petition was denied and judgment entered against the relator for costs. The record is brought to this court for review on writ of error. Under the general and well established proposition of law that a writ of *mandamus* will not be awarded in any case unless the relator shows a clear legal right to have the thing sought by it done, and in the manner asked, the judgment of the Circuit Court was clearly right in denying the writ to compel the running of cars within the corporate limits of either of the terminal cities. The right of defendant to operate its cars over the tracks of the Belleville Electric Railway Company within the city limits of Belleville was conditioned, that defendant should first obtain

the agreement or assent of the Belleville Electric Railway Company. It does not appear from the evidence that defendant ever obtained such assent except in so far as may be inferred from the defendant's use of the tracks for a time. Such inference at most can apply only for the time the tracks were used, and with the contract or agreement between the companies undisclosed we are without evidence that when the petition was filed the defendant had any legal right or license whatever to operate its cars to the public square in Belleville. If we are to infer anything from the acts of the companies between whom a contract under the condition of the Belleville ordinance may have been made, it is that whatever the right of defendant to the use of the tracks of the Belleville Electric Railway Company prior to August, 1901, that right terminated when defendant ceased to carry passengers and run its cars as theretofore. Clearly the relator was not entitled to a writ to compel the operation of cars in Belleville. Respecting the operation of cars in East St. Louis it may not be seriously contended from the record before us that defendant ever had a legal right to run its cars through that city to the Eads bridge. For a period of time the defendant did run its cars but its sole and only right and license so to do was derived from a traffic agreement made with the East St. Louis Electric Street Railway Company. By this agreement defendant was permitted to run its cars over the lines and tracks of the said street railway company. But without license and authority from the city council, which it never had, was without lawful right and was under no legal duty to continue the operation of its cars within the city limits. We are, therefore, of opinion that the Circuit Court properly denied the writ of *mandamus* under the first prayer of the petition.

It remains now to consider whether the defendant may be compelled to run and operate passenger cars over its road between Belleville and East St. Louis according to the third prayer of the petition. In the case of North v. Trustees, etc., 137 Ill. 296, it is said by the Supreme

426    APPELLATE COURTS OF ILLINOIS.

VOL. 122.]   The People v. St. L. & Belleville Electric Ry. Co.

Court that "*Mandamus* will not lie, on the petition of a private citizen merely to settle some doubtful question, but to entitle him to the writ he must clearly show that he has a legal right which has been denied, and that the denial of such right affects his personal interest. The writ is never awarded to settle mere abstract rights unaccompanied with substantial or practical benefits." Applying the proposition just quoted to the facts in this case, it is not clearly apparent that the relator has been injured in his personal interest or that he would in any way be benefited by the reinstatement of passenger service upon defendant's road. It is only as a passenger seeking transportation from Belleville to East St. Louis or *vice versa* that relator is personally interested, and for aught that appears in this record there is and was at the time of filing the petition ample facilities for the carriage and accommodation for relator and all other would-be passengers, and with precisely the same kind of service now sought to be required of the defendant. Inasmuch as the East St. Louis & Suburban Railway Company with a parallel double track electric road, runs its passenger cars from the public square in Belleville to the Eads Bridge in East St. Louis, it probably would be a successful competitor of defendant for relator's patronage, for the reason that defendant's terminal stations at or near the city limits would be less accessible. In what respect then, it may be asked, would be the practical benefit to the relator? The defendant was incorporated under the General Railway Act, and under the authority of Wiggins Ferry Co. v. E. St. L. U. Ry. Co., 107 Ill. 450, had the right in the first instance to determine the character of its railroad business within the general purpose of the statute. It could have then elected to carry freight only without being under any obligation to carry passengers. But whether, having declared itself a passenger carrier and entered upon that business it may afterwards change to a carrier of freight only, to the prejudice of the travelling public, was not decided in the Wiggins Ferry case, nor do we find it necessary to decide that

question in this case. For the reasons already stated we are of opinion that under the facts presented the petition is without merit and that the judgment of the Circuit Court ought to be affirmed.

*Affirmed.*