## Hastings Express Company v. City of Chicago.

### Gen. No. 13,325.

1. ORDINANCE—*validity of, requiring licensing of public carts.* A city council has power to require public carts to obtain a license.

2. ORDINANCE—*effect where void in part.* An ordinance void in part and valid in part may be sustained as to the part which is valid.

3. COMMON CARRIER—*what is, within meaning of ordinance requiring licensing of public carts.* An express or teaming company which owns horses and wagons and hires teamsters, by means of which merchandise is carried throughout a city for the public generally, is a common carrier within the meaning of an ordinance requiring the licensing of public carts, notwithstanding such express or teaming company exercises a discretion as to the person or persons whom it will serve.

4. COMMON CARRIER—*defined.* A common carrier is one who undertakes for hire or reward to transport from place to place the goods of those who choose to employ it.

Action commenced before justice of the peace. Appeal from the Criminal Court of Cook county; the Hon. A. C. BARNES, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed July 1, 1907.

LAMBORN & GUERNSEY, for appellant.

HOWARD S. TAYLOR and JAMES DONAHOE, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Appellant was summoned before a Cook county justice of the peace, charged by the city of Chicago with violating sections 2325, 2326, 2331 and 2346 of the Municipal Code pertaining to the licensing of public carts, found guilty and fined in the sum of $100, the maximum penalty fixed by the ordinance. An appeal from the judgment of the justice was perfected to the Criminal Court, where, upon an agreed state of facts and the waiver of a jury trial, the judge of that court concurred in the action of the primal tribunal as to appellant's guilt and assessed a fine of $50, upon which judgment was entered, and this review is sought in an effort to reverse the judgment of the Criminal Court.

As we view the argument of appellant, its contentions are in the main embraced in a challenge of the validity of the ordinance, and that appellant is not a common carrier.

We are not impressed with the argument that the ordinance is invalid, or that it must be construed as a whole, and if found to be invalid in any of its parts, it must be treated as a void ordinance and fail of its intended purpose. Were we prepared to hold any one or more of the provisions of the ordinance in-

valid, which we are not, our duty in the premises ceases when we find that those sections of the ordinance involved in the charge, for violating which appellant was fined, are sound and within the power of the city council to enact as a municipal law and regulation. It is well settled that an ordinance void in part and valid in part may be sustained as to the part which is valid. City of Quincy v. Bull, 106 Ill. 337; Harbaugh v. City of Monmouth, 74 Ill. 367; Kettering v. City of Jackson, 50 Ill. 39; Imes v. C. B. & Q. Ry., 105 Ill. App. 37.

The ordinance in question was passed in virtue of the power conferred upon the common council by sec. 1, art. 5, chap. 24, R. S., viz.:

"The city council in cities * * * shall have the following powers: * * * *Forty-second:* To license, tax and regulate hackmen, draymen, omnibus drivers, carters, cabmen, porters, expressmen and all others pursuing like occupations, and to prescribe their compensation."

In Farwell v. City of Chicago, 71 Ill. 269, an ordinance similar to the one now before us was upheld as a proper exercise of the police power delegated to the municipality by the law-making power of the state, although the ordinance was declared to be inapplicable to the Farwells because they were not common carriers. This case, however, regardless of others, is a sufficient expression of opinion of the highest tribunal of this state by which the validity of ordinances of the character of the one under which appellant was convicted may be sustained.

It now but remains for us to dispose of the principal and controlling contention as to whether or not appellant is a common carrier, for if it is not a common carrier then the ordinance here is as inapplicable to appellant as was the ordinance in the Farwell case *supra.* For the facts of the case we turn to the agreed statement of them found in the record. Among other things this statement discloses, as appellant's cor-

porate title indicates, that it is engaged in the express business and hauls goods for others for hire in a limited way within the city boundaries and its adjoining suburbs; that such goods carried consist largely of crates, boxes and bags; that appellant owns horses and wagons and hires teamsters, by means of which such merchandise is transported; that it has stables and offices within the city limits, and a receiving station or depot at Twelfth street and Fifth avenue, also within the city, and that on its offices and stations are signs, "Hastings Express Company," and that its wagons bear similar signs; that it has a great many regular customers under express contract; that it also has "pick up or collection wagons which cover the down town territory on regular daily runs, collecting goods for shipment from its regular customers, viz.: department stores, wholesale houses, etc.; that the goods so collected are taken to the warehouse aforesaid, where they are unloaded into freight cars; that a number of shippers regularly deliver loads of goods by their own teams to said warehouse; that said cars are transported by the Chicago, Rock Island & Pacific Railway each day to the several stations of defendant company in said suburban towns, where the goods are classified and separated according to their destination and made up into wagon loads and delivered by delivery wagons to the consignees on regular daily runs; * * * that way bills are made for said several shipments, from which delivery sheets are made at the several distributing centers, which specify the names of consignor and consignee, character of package, etc., and that the drivers of the delivery wagons use these sheets in the delivery of packages and take thereon the signature of consignees as a receipt for the goods; * * * that besides the work done for regular shippers and customers, defendant carries goods, wares and merchandise for hire in the territory which it covers for any persons who may apply for such service when the work can be done

by defendant's wagons on their regular runs, and that on these regular trips defendant's wagons pick up parcels or any kind of packages on the route, but only on orders given from one of the defendant's offices, and in all such cases there is a special agreement as to the rates made beforehand; that defendant only accepts such transient business as is offered to it and which it can handle with its regular business without inconvenience, and in every case where defendant accepts goods for transportation from transient or unknown persons it makes a special agreement as to the price which shall be charged for the service; that defendant's drivers, employes and agents never solicit business on the streets, and that defendant's wagons have no public stands on the streets or in other public places where they stand and wait for business generally, but that all arrangements for the carriage of goods are made with defendant through some one of its several offices; that its transient business is but a small percentage of its total business; that defendant finds it necessary in the conduct of its business, on account of the constantly changing personnel of its employes, the need of repairs, etc., to its wagons, to frequently shift its drivers and place them on different wagons and different routes.''

The foregoing recitation would seem to us to contain facts in relation to appellant's business that in themselves fill all the legal requirements stamping it as a common carrier within the territory stated, both within and without the limits of the city of Chicago. The fact that it does not solicit business or have stands for its wagons upon the streets of the municipality, but makes special contracts for the carriage of all the goods it hauls, and does not carry for all who apply, or at the ordinance tariff, in no way detracts from its being in law a common carrier, for that it has all the attributes of a common carrier by team and wagon is manifest from the quotations above indulged from the agreed statement of facts appearing in the record.

Appellant amply fulfills the definition of a common carrier as "one who undertakes for hire or reward to transport from place to place the goods of those who choose to employ him." Vol. 6, Am. & Eng. Enc. Law, 237. Also another definition on p. 261 *ibid.* as "Ordinary carriers and expressmen engaged in carrying freight to and from a depot or warehouse, or between places in the same locality, or between different localities are common carriers and are liable as such."

Appellant does not relieve itself from being a common carrier because of its performance of the business of a common carrier in a restricted way. This contention was held to be unavailing in Wiggins Ferry Co. v. E. St. Louis St. Ry. Co., 107 Ill. 450, where the court say: "Nor do we see anything in the objection that the business of the company is to be limited to the carrying of freight offered in cars only. Every common carrier has the right to determine what particular line of business he will follow. If he elects to carry freight only, he will be under no obligation to carry passengers, and *vice versa.* So if he holds himself out as a carrier of a particular kind of freight, or of freight generally, prepared for carriage in a particular way, he will be bound to carry to the extent and in the manner proposed. He will, nevertheless, be a common carrier."

The facts in the cases of City of Chicago v. A. M. Forbes Cartage Co., and same v. R. J. Mix Transfer Co., reported in 1 Illinois Circuit Court Reports, 473, are clearly distinguishable from the case at bar. The ordinance here was also in cases *supra* before the Criminal Court. The Forbes and Mix companies rented teams and wagons, with drivers, to certain firms and corporations under time contracts, which were exclusively within the control and under the direction of the users. For the time of the leasing these teams were owned by, and were under the control of, the

users, and whatever they carried was no concern of the owners and without their control. They were not carrying, hauling or transporting goods; they were merely leasing the paraphernalia and men constituting the means by which such hauling was accomplished. During the term of the leases they parted with the control of the horses, wagons and drivers, and in no sense could they be held to have engaged in the business of carriers. They fell within the principle stated by Cooley in his work on Torts, at page 283, that "No man becomes a common carrier except with his own consent; but when he does so, he must conform to those principles of the common law under which the business has grown up."

In the cases of Marshall Field & Co. v. Becklenberg Express Co., and twelve other cases decided at *nisi prius,* 1 Ill. Cir. Ct. Rep. 59, six firms and corporations doing business in many respects similar in all essential features to that of appellant, were held to be common carriers and amenable to all the duties and obligations which the law imposes upon common carriers.

We are of opinion that appellant is a common carrier, and that the ordinance in question is valid, and that appellant is guilty of its violation in not procuring a license in conformity with its provisions.

The judgment of the Criminal Court fining appellant $50 is affirmed.

*Affirmed.*